14-1017
_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

THE TURFGRASS GROUP, INC., and UNIVERSITY OF
GEORGIA RESEARCH FOUNDATION, INC.,

Plaintiffs-Appellants,

v.

CAROLINA FRESH FARMS, INC., CAROLINA FRESH FARMS, L.L.C.
F/K/A CAROLINA FRESH FARMS, INC., and JOHN A. FOGLE, SR.,

Defendants-Appellees.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA IN 5:10-cv-00849-JMC
_____

BRIEF OF APPELLANTS

Duff Nolan
NOLAN LAW GROUP, PLLC
Post Office Box 68
Stuttgart, AR 72160
Telephone: (870) 673-3200

Damon C. Wlodarczyk
RILEY POPE & LANEY, LLC
Post Office Box 11412
Columbia, SC 29211
Telephone: (803) 799-9993

Attorneys for Appellants

January 8, 2014

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____

_____                    _____
         Date                                        Signature of counsel

                                         _____
                                              Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................i

TABLE OF AUTHORITIES ................................................ iii

STATEMENT OF JURISDICTION  ........................................1

STATEMENT OF ISSUES  ..................................................1

STATEMENT OF THE CASE AND FACTS  .......................................3

    A. Proceedings Below  .................................................3

    B. Statement of Facts .................................................4

SUMMARY OF ARGUMENT  ............................................13

ARGUMENT AND CITATION OF AUTHORITY  ............................................17

    1. Interlocutory Order filed May 3, 2011 [Doc 91]  ...........................................17

        A. The District Court erred in issuing its Interlocutory Order [Doc 91] as such Order was based on an erroneous construction of the law  ........19

        B. The District Court's finding that Plaintiffs' Counsel violated South Carolina Rule of Professional Conduct 8.4(d) was not supported by evidence ............................................28

        C. The District Court's erroneous exclusion of the tape recordings was harmful to Plaintiffs' substantial rights and should be reversed  ........29

    2. Interlocutory Order filed March 14, 2013 [Doc 173] ....................................33

    3. The District Court Erred in Granting Defendant's Motion for Judgment in Their Favor Regarding Plaintiffs' Claims for Actual Damages under the Plant Variety Protection Act and the Lanham Act  ........................................38

    4. Part of Interlocutory Order filed August 9, 2013 [Doc 198] Excluding Evidence of Recordings which Relate to Order [Doc 91] above  .................41

    5. Interlocutory Order filed August 9, 2013 [Doc 200] to the Extent the Appellate Court would Conclude the Issues Raised and Ruled upon in said Order were not Preserved for Appellate Review Since the Evidence was not Proffered at Trial ............................................42

    6. Final Judgment filed September 5, 2013 [Doc 227] to include but not limited to the following: ............................................44

        A. The denial of Plaintiffs' Motion for Directed Verdict on the Plant Variety Protection Act and Lanham Act claims  ................................44

B. The District Court Erred in Limiting the Reasonable Royalty to 7% under the Plant Variety Protection Act Claim ...................................48

C. The denial of Plaintiffs' request to place the recordings of certain undercover turfgrass buys into evidence after Defendant cross-examined Plaintiffs' witness regarding undercover Turfgrass purchases that were not raised on direct examination, thereby opening the door, but preventing Plaintiffs from addressing and clarifying the issues on redirect. ..............................................................................49

D. The Denial of Plaintiffs' Objections to Certain Jury Charges ............53

E. The Denial of Plaintiffs' Request to Proffer the Undercover Recordings to the Extent the Appellate Court could Conclude the Issue was not Preserved for Appellate Review because the Evidence was not Proffered at Trial ..................................................................55

CONCLUSION.........................................................................................................56

ADDENDUM ...........................................................................................................58

PROOF OF SERVICE..............................................................................................82

CERTIFICATE OF COMPLIANCE........................................................................83

# <u>TABLE OF AUTHORITIES</u>

## <u>UNITED STATES SUPREME COURT</u>

*Alford v. United States*, 282 U.S. 687 (1931) ...........................................................30

*Beauharnais v. People of State of Ill.*, 343 U.S. 250 (1952) ...................................56

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ...............................................25, 26

*Cooter&Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)...........................................18

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) .....................34, 38

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .......................................................33

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) ...........................20

*Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982) ..........................................20

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)..............................................34

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) ..........................................25, 26

## <u>FEDERAL CIRCUIT COURT OF APPEALS</u>

*Abbott Laboratories v. Brennan*, 952 F.2d 1346(Fed. Cir. 1991) .........................53

*Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362 (Fed. Cir. 2002)...........................53

*Environ Products, Inc. v. Furon Co.*, 215 F.3d 1261 (Fed. Cir. 2000) ..................54

*i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831 (Fed. Cir. 2010)....................34, 38

*Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993) .............................53

*Odetics, Inc. v. Storage Tech. Corp*, 185 F.3d 1259 (Fed. Cir. 1999).............*passim*

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
    695 F.3d 1285 (Fed. Cir. 2012) .......................................................................18

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010).........................18

*StudiengesellschaftKohle, mbH v. Dart Industries, Inc.*,
    856 F.2d 1564, (Fed. Cir. 1988) ...............................................................40, 49

## <u>FEDERAL STATUTES</u>

7 U.S.C. §2541.....................................................................................................45, 46

7 U.S.C. §2564.....................................................................................................39, 48

15 U.S.C. §1125...................................................................................................46, 47

28 U.S.C. §1295.........................................................................................................1

28 U.S.C. §1338 ........................................................................................................1

## <u>OTHER FEDERAL CIRCUIT COURTS OF APPEALS</u>

*AMC Mech. Contractors, Inc. v. Marriott Corp.*, 896 F.2d 545 (4[th]Cir. 1990) ......44

*Bateman v. Huffman*, 905 F.2d 1528 (4[th]Cir. 1990) ...............................................55

*Brown v. McLean*, 159 F. 3d. 898 (4th Cir. 1998) ....................................................18

*Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009) ...........................18, 41, 50, 55

*Buckley v. Mukasey*, 538 F.3d 306 (4th Cir. 2008) .........................................18, 30, 48

*Business Development Corp. v. United States*, 428 F. 2d. 451 (4th Cir. 1970) ........45

*Byrd v. Hopson*, 108 F.App'x at 749 (4th Cir. 2004) ..................................25, 26, 27

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) ...........................................25, 26

*Clark v. Maryland Hospitality, Inc.*, 972 F.2d. 338 (4th Cir. 1992) .......................20

*Corbett v. Fleetwood Homes of N. Carolina*, 213 F.3d 630 (4th Cir. 2000) .............50

*Dixon v. Edwards*, 290 F.3d. 699 (4th Cir. 2002) ......................................................38

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315 (4th Cir. 2008) ...18

*Fuesting v. Zimmer, Inc.*, 448 F.3d 936 (7th Cir. 2006) ...........................................43

*Gairola v. Com. of Va. Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985) ....44, 45

*Hinkle v. Hampton*, 388 F.3d. 141 (10th Cir. 1968) ................................................50

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002) ...........................18

*In re Wray*, 433 F.3d 376 (4th Cir. 2005) ..............................................................18

*Kilborn v. Bakhir*, 70 F. App'x 692 (4th Cir. 2003) ...........................................25, 26

*Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d. 693 (8th Cir. 2003). .23, 24

*Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130 (4th Cir.1988)............29

*Olson v. Ford Motor Co.*, 481 F.3d 619 (8th Cir. 2007) ...........................................43

*Perry v. Otis Elevator Co.*, 21 F.3d 423 (4th Cir. 1994) ..........................................44

*Pullman Co. v. Hall*, 55 F.2d 139 (4th Cir. 1932) ...................................................31

*Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976) ................................................18

*U.S. v. Shaffer Equipment, Co.*, 11 F.3d 450 (4th Cir. 1993) ..................................27

*United States v. Blake*, 571 F.3d 331 (4th Cir. 2009) ..............................................50

*United States v. Gilbert*, 198 F.3d 1293 (11th Cir. 1999) .........................................26

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003)........................................50, 53

*United States v. Jordan*, 466 F.2d 99 (4th Cir. 1972)...............................................31

*Weekley v. Thomas*, 63 F.2d 988 (4th Cir. 1933).....................................................31

*Williams v. Staples, Inc.*, 372 F.3d. 662 (4th Cir. 2004) ..........................................20

*Wipf v. Kowalski*, 519 F.3d 380 (7th Cir. 2008) .....................................................42

## DISTRICT COURT

*Cartier, a division of Richemont, N.AM.Inc. v. Symbolix, Inc.,*
    386 F.Supp.2d 354 (S.D.N.Y. 2005) ...........................................................26

*Georgia Pacific v. United States Plywood Corp.,*
    318 F.Supp. 1116 (S.D.N.Y. 1970) ......................................................35, 36

*GidatexS.r.L. v. Campaniello Imports, Ltd.,*
    82 F.Supp.2d 119 (S.D.N.Y. 1999) ..............................................20, 21, 26

*Mobile Oil Corp. v. Amoco Chem. Corp.*, 915 F.Supp. 1333 (D.Del. 1994) ....39, 48

## STATE COURTS

*Cook v. Reg'lCommc'ns, Inc.*, 244 Ga. App. 869, 870 (2000) ................................54

*Goodwin v. State*, 154 Ga. App. 46, 50 (1980). ......................................................23

*In re: Warner*, 335 S.E.2d. 90 (S.C. 1985) .......................................................23, 24

*In re: An Anonymous Member of the South Carolina Bar*,
    322 S.E.2d. 667 (S.C. 1984) .........................................................................23

## STATE STATUTES

O.C.G.A. §13-2-2(1) (West 2013) ..........................................................................54

O.C.G.A. §16-11-66(West 2013)..............................................................................22

S.C.A. §17-30-30(West 2013) ..................................................................................22

## RULES AND REGULATIONS

Federal Circuit Rule 28..................................................................1, 18, 50, 55

Federal Rules of Appellate Procedure 4 .................................................................1

Federal Rules of Appellate Procedure 28 ..............................................1, 18, 50, 55

Federal Rules of Civil Procedure 61 ......................................................................30

Federal Rules of Evidence 103 ....................................................................42, 44, 56

Federal Rules of Evidence 702 ........................................................................34, 38

Model Rule of Professional Conduct 4.2................................................................24

South Carolina Local Rule 28.................................................................................55

South Carolina Rule of Professional Conduct 8.4 ...........................................*passim*

## OTHER AUTHORITIES

ABA Formal Ethics Opinion 95-396 ......................................................................20

ABA Formal Ethics Opinion 01-422 .................................................................21, 23

ABA Formal Ethics Opinion 337 ....................................................15, 21, 22, 23

ABA Formal Ethics Opinion 441 .......................................................................15

Christopher B. Mueller & Laird C. Kirkpatrick, EVIDENCE 10, 21
    (4th ed. Aspen Publishers 2009)....................................................................42

Federal Rule of Evidence 103, Advisory Comm. Notes, 2000 Amendment .........42

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellants state as follows:

(a)     There have been no previous appeals in this case.

(b)     They are aware of no other case that will be directly affected by the Court's decision in this case.

## STATEMENT OF JURISDICTION

Pursuant to F.R.A.P. 28(a)(4) and Federal Circuit Rule 28(a)(5), Appellants state as follows:  This is an Appeal from a Final Judgment of the United States District Court for the District of South Carolina, entered on September 5, 2013, which Judgment disposed of all parties' claims.  The District Court had subject matter jurisdiction to enter such Final Order pursuant to 28 U.S.C. §1338(a). Appellants timely filed their Notice of Appeal to this Court on October 4, 2013 pursuant to F.R.A.P. 4(a).  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1295(a)(1).

## STATEMENT OF ISSUES

1.     Whether the District Court erred by sanctioning Plaintiffs' counsel through exclusion of certain tape-recordings and other related evidence via use of its inherent power [Interlocutory Order Filed May 3, 2011, Doc 91]; whether the District Court erred by partially granting Defendant's Motion in Limine which excluded  evidence  of  such  tape-recordings  and  other  related  evidence

1

[Interlocutory Order filed August 9, 2013, Doc 198]; and whether the District Court erred by prohibiting Plaintiffs from introducing evidence of such tape-recordings after Defendant opened-the-door to same at trial.

2.      Whether the District Court erred in issuing its Interlocutory Order filed March 11, 2013 which denied Plaintiffs' Motion for Summary Judgment [Doc 172].

3.      Whether the District Court erred in issuing its Interlocutory Order filed March 14, 2013 which excluded the testimony of Plaintiffs' damages expert Donald Davis.  [Doc 173].

4.      Whether the District Court erred by denying Plaintiffs' Motion for Directed Verdict as to its PVPA and Lanham Act Claims.

5.      Whether the District Court erred by limiting the amount of the reasonable royalty to which Plaintiffs were entitled.

6.      Whether the District Court erred by denying Plaintiffs' Objections to certain jury charges.

## STATEMENT OF THE CASE AND FACTS

### A.      PROCEEDINGS BELOW

Plaintiffs/Appellants filed this action in the District Court for the Middle District of Georgia against Defendant/Appellee on October 28, 2009 alleging

2

violation of the Plant Variety Protection Act, violation of the Lanham Act, and breach of contract claims. [Doc 1].

On April 6, 2010, Judge Clay D. Land granted Defendant's Motion to Transfer the case to the District Court of South Carolina. [Doc 17].

On October 10, 2010, Defendant filed a Motion for Sanctions against Attorney Nolan based on his undercover investigation of Defendant's statutory violations. [Doc 54]. After a hearing on May 3, 2011, the District Court granted in part and denied in part Defendant's Motion for Sanctions. The District Court ruled that Attorney Nolan violated South Carolina Rule of Professional Conduct 8.4, but imposed no pecuniary penalty. [Doc 91]. Instead, Judge Seymour excluded from trial all surreptitious recordings created by Plaintiffs' Investigator.[Doc 91].

On May 14, 2012, Defendant simultaneously filed a Motion for Summary Judgment and a Motion in Limine to Exclude Plaintiffs' Expert, Donald Davis. [Docs 146&147]. Also, Plaintiffs filed a Motion for Summary Judgment on May 15, 2012. [Doc 148].

After a hearing on March 7, 2013, the District Court granted Defendant's Summary Judgment as to Defendant John Fogle, Sr., denied Defendant's Motion for Summary Judgment as to Liability, granted in part Defendant's Motion in Limine, granted Defendant's Summary Judgment as to actual damages under the

PVPA and Lanham Act, and denied Summary Judgment as to all other claims. [Docs 172, 173, & 174].

Following a five (5) day trial in the District Court of South Carolina before Judge J. Michelle Childs, the jury returned a verdict for the Defendant on September 4, 2013. [Doc 222].

Plaintiffs timely appealed when they filed their Notice of Appeal on October 4, 2013. [Doc 233].

## B.     STATEMENT OF FACTS

In the present action, the University of Georgia Research Foundation, Inc. ("UGARF") secured a Plant Variety Protection Act Certificate ("PVPA" and/or "PVPA Certificate") to a novel variety of centipede turfgrass called *TifBlair*. [Trial Transcript "TT", p. 98].  This new product was developed after a decade of research and an investment of in excess of One Million Dollars for product development and research.  [TT, p. 176].  It is undisputed in the present action that this PVPA Certificate was issued to UGARF.  [TT, p. 98].  Thereafter, in order to market the product, UGARF entered into an exclusive license with The Turfgrass Group, Inc. ("TTG") allowing that entity to grow, cut and market *TifBlair*.  [TT, p. 97].  This fact is also undisputed.  As part of its marketing efforts of *TifBlair*, TTG entered into a non-exclusive sub-license agreement with the Defendant Carolina

4

Fresh Farms, LLC ("Defendant") on or about February 28, 2001. [TT, p. 105; Exh L-1].

During the pendency of the non-exclusive sub-license agreement between the parties, Defendant sold over a million of dollars of *TifBlair* on an annual basis. A dispute arose between the parties when Defendant did not keep its fields in certification. [TT, p. 303]. A product such as *TifBlair*, which has received a PVPA Certificate, must be kept in certification in order to sell the same as a certified and protected product. [TT, pp. 287-88]. In that regard, each state has its own inspection agency that is independent of the parties to the contractual arrangement. [TT, p. 281]. In the case at hand, that entity was Clemson University. [TT, pp. 281-282]. Clemson University would perform inspections of what was believed to be the various fields of the Defendant. [TT, p. 297]. However, in fact, Defendant, unknown to TTG, was only attempting to keep one (1) small field in certification, although it had multiple large fields in production. [TT, p. 302]. This aspect of the Defendant's operating arrangement went undiscovered for a long period of time. [TT, p. 303]. In 2006, Clemson University notified the Defendant and TTG that the Defendant had failed to meet certification. [TT, p. 302, Exh. L-20]. In the course of following up on Clemson's inspection, it was discovered that Defendant had been only trying to certify an approximate 35 acre field. Thus, Defendant had failed to comply with the terms of its non-

5

exclusive sub-license agreement with TTG. [TT, p. 302]. Accordingly, TTG terminated the contractual arrangement with Defendant for cause in November, 2006. [TT, pp. 308, 313, 323].

Thereafter, industry rumblings arose indicating that perhaps Defendant was still engaging in the marketing of centipede turfgrass which was touted as having the novel properties attributable to *TifBlair*. [TT, p. 333]. Those properties as established by virtue of the PVPA Certificate were that it was winter hardy and cold tolerant. [TT, pp. 177-178]. In fact, Defendant extolled these unique properties of *TifBlair* during the years it operated under it sub-license with TTG and had marketed the same via the Internet, advertising brochures, yellow page ads and other means. [TT, pp. 332-333]. Those ads represented that *TifBlair* was a new variety of centipede that was more winter hardy, cold tolerant with a deeper root system and overall a better grass. [TT, p. 333]. At the point in time that is in dispute in this question, there were really only two (2) types of centipede in existence. [TT, p. 98]. Those were common centipede and *TifBlair*. [TT, p. 98]. While authorized to sell under the sub-license agreement, Defendant promoted *TifBlair* via several means, including the Internet and brochures. Those items correctly designated *TifBlair* as a new variety with winter hardiness and cold tolerance. In 2007 and subsequent years, Defendant used the exact same ads but changed *TifBlair* to Carolina Green. [TT, p. 333]. Defendant admitted the

6

representation that Carolina Green was a "new variety" was a false statement. [TT, pp. 697, 710-711, 716, 779].

As part of the termination of the sub-license agreement between TTG and the Defendant, the latter was required to allow TTG to inspect all of its fields in production on its farms. Defendant absolutely refused to allow inspection by representatives of TTG. Furthermore, under the contractual arrangement between the parties, Defendant was to destroy all fields within a certain time period. It was represented at trial that the only 65 acres of *TifBlair* remaining at the time of the termination was destroyed in or around May, 2007.

After the rumors reached TTG and UGARF, it was decided to engage the Nolan Law Group to investigate the matter. [TT, p. 330]. In the course of that engagement, the Nolan Law Group engaged the services of an individual named Zelotis Wofford to conduct an investigation as to whether or not *TifBlair* was being improperly sold by Defendant. [TT, p. 330]. In September, 2007, Mr. Wofford made his first trip to Carolina wherein he purchased three (3) pallets of turfgrass at different locations of Defendant. That turfgrass was represented by employees of the Defendant to be a new variety of turfgrass known as Carolina Green which had *TifBlair* mixed in it. [TT, pp. 333-334]. Since this was not a clear representation that *TifBlair* itself was being utilized by the Defendant, subsequent trips were made in 2008 to secure purchases of turfgrass to see if the same could be determined to

7

be *TifBlair* in order to ascertain whether or not a violation was going on that would allow a good faith basis for initiating litigation against the Defendant.

Not all of the buys in September, 2007 were recorded, but some were surreptitiously recorded by Mr. Wofford.

In 2008, Mr. Wofford reinvestigated Defendant. During this trip, he made several purchases of different types of turfgrass which he surreptitiously recorded. Those recordings reflected that employees of Defendant represented that *TifBlair* was the only centipede turfgrass they had and that it was the only centipede turfgrass they had grown, cut or sold for over ten (10) years. [Tape-recording of personal visit of October 29, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG 01-00161; Tape-recording of personal visit of October 30, 2008, pp. 1, 4, 5, disclosed in Plaintiffs' Initial Disclosures as Bates Numbers TTG 01-00220, 01-00223, and 01-00224; Tape-recording of personal visit of October 31, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG 1-00193, proffered at TT, p. 770, line 14 through p. 774, line 5]. In October, 2008, Mr. Wofford was advised that he could buy some and they would have it for him. *Id*. He was told specifically that *TifBlair* was actually all that Defendant grew at the time. *Id*. It was noted that since it responded better to cold weather, it would come up earlier in the spring. [Tape-recording of telephone conversation on October 29, 2008, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG

1-00216, proffered at TT p. 770]. He was advised that older people only wanted *TifBlair* so that was all that Defendant planted. *Id.* On one occasion Mr. Wofford was provided an invoice stating he was sold *TifBlair* [Tape-recordings of personal visit on October 29, 2008, p. 4, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG-162, proffered at TT, pp. 770-774]. Mr. Wofford visited different stores of the Defendant which has numerous locations in South Carolina and at one point in time had a store in Augusta, Georgia. [TT, pp. 335, 666; Deposition of CFF/Fogle, pp. 130, 134]. Additionally, Mr. Wofford was advised that Defendant did not grow common centipede. [Tape-recordings of personal visit on October 31, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as TTG-193, proffered at TT, pp. 770-774]. On another occasion, he was advised by a woman that the grass he was getting was *TifBlair*, but it was not named *TifBlair* anymore and that she could only mash the centipede button for the receipt and could not mash the button that said *TifBlair*, but said that *TifBlair* and common centipede were the same thing. [Tape-recordings of telephone conversation on October 29, 2008, pp. 1-2, disclosed in Plaintiffs' Initial Disclosures as TTG-215-216, proffered at TT, pp. 770-774; Tape-recordings of personal visit on October 30, 2008, pp. 1-6, disclosed in Plaintiffs' Initial Disclosures as TTG-220-225, proffered at TTpp. 770-774].

Important to note is that the tape recording of September 28, 2007 performed by Mr. Wofford dealt with an encounter he had with the Chief Executive Officer

9

("CEO") of the Defendant at the time. [Tape-recording of personal visit on September 28, 2007, pp. 1-11, disclosed in Plaintiffs' Initial Disclosures as TTG 138-148, proffered at TT, pp. 770-774]. That individual was Mr. John Fogle who founded the company and was the grandfather of Andy Fogle, the corporate CEO and designee who testified at trial. [TT, pp. 595, 652, 682]. Mr. Andy Fogle had replaced Mr. John Fogle in that capacity. [TT, p. 639]. However, when meeting with Mr. John Fogle and recording him for an undercover purchase, the CEO of the Defendant represented in 2007 to Mr. Wofford that Carolina Green was a new grass and it was the best you could buy and that one could not do any better than that. [Tape-recording of personal visit on September 28, 2007, pp. 6-8, disclosed in Plaintiffs' Initial Disclosures as TTG pp. 143-145, proffered at TT, pp. 770-774]. The undercover tape has Mr. John Fogle acknowledging that *TifBlair* is the same thing as Carolina Green. [Tape-recording of personal visit on September 28, 2007, pp. 6-8, disclosed in Plaintiffs' Initial Disclosures as TTG 143-145, proffered at TT, pp. 770-774]. It was a patently false statement that any new variety such as Carolina Green had been invented by the Defendant and such admission was acknowledged at trial by the testimony of the subsequent CEO who testified that Carolina Green was just a marketing name that Defendant had for common centipede. [TT pp. 697, 710-711, 716, 779]. John Fogle also testified

that common centipede was all that the Defendant sold after the termination of the contract. *Id.*

At trial, Mr. Andy Fogle stated that certain invoices which were introduced from the Defendant which reflected sales in 2007 of *TifBlair* in the amount of $15,374.37, Carolina Green in the amount of $72,915.16 and sales of "centipede" in the amount of $1,483,524.24. [TT, p. 852]. Mr. Andy Ogle testified that these were all sales of common centipede unless it was *TifBlair* that was purchased properly from an entity known as Green Acres and then re-sold. [TT, p. 777]. Approximately forty-seven (47) invoices to Defendant from Green Acres were introduced into evidence at trial. [TT, p. 836]. The latest one of those in the year 2007 that reflected any sales to Defendant of *TifBlair* occurred on or about March 29, 2007. [TT, p. 755]. It is undisputed that centipede turfgrass can only live a matter of days after it is cut, so any and all sales of *TifBlair* by Defendant would have had to occur within a few days of the last invoice from Green Acres, if that statement is true. [TT, pp. 338-339; 777]. Additionally, the Defendant admitted at trial that at the time of termination of the contract, it had a field of 65 acres of *TifBlair*. [TT, p. 778]. In its deposition, the Defendant's CEO had admitted that the field had been cut and sold. [TT, p. 778]. Although the contract indicated it was to be sold as a variety not specified, the Defendant admitted it was sold as common centipede. [TT, p. 648, line 12 through p. 649, line 5; p. 778, line 16 through

11

p.779, line 5]. Although the contract required payment of a royalty from any such sale, the Defendant admitted that it did not pay any royalty and contended at trial that since it was sold as common centipede and not as *TifBlair*, it did not owe any royalty thereon. [*Id.*]. The royalty under the contract rate when the contract was in existence was seven (7%). Defendant admitted that it changed its computer system for 2007 and starting then, invoiced all centipede sales as "centipede". [TT, pp. 643, 850]. However, as stated, certain invoices for *TifBlair* and Carolina Green were discovered. Andy Fogle stated such invoices were created by a clerk pushing the wrong button.[TT, p. 651]. Yet, the tape recording of October 30,2008, reveals that a female employee named Kathy Nelson told the Undercover Investigator that Carolina Green and *TifBlair* were the same thing but that *TifBlair* was a patent name that the did not own anymore and that she could not mash the *TifBlair* button anymore. *See Supra Statement of Facts.*

Furthermore, at trial, Mr. Andy Fogle testified that the field containing the only acreage of *TifBlair* in existence on the farms of the Defendant was destroyed by May, 2007. [TT, p. 906, lines 12-15; p. 949, lines 3-16]. Thus, no sales of *TifBlair* from that tract could have occurred after that date. The actual invoices from the Defendant that show *TifBlair* sales reflect sales in 2007 totaling $15,374.37. [TT, p.650, line 22 through p. 651, line 5]. By way of explanation of

12

these invoices, the CEO offered the excuse "some clerk pushed the wrong button".

[TT, p. 650, line 22 through p. 651, line 5].

## SUMMARY OF ARGUMENT

In the present action, the District Court abused its discretion in purportedly sanctioning the attorney for the Plaintiffs by excluding the undercover recordings of buys of Plaintiffs' PVPA protected product known as *TifBlair*, a centipede turfgrass. This abuse of discretion occurred because the District Court misconstrued certain authority and ignored controlling authority and in fact actually sanctioned the Plaintiffs. Specifically, the District Court found that Plaintiffs' lead counsel, Mr. Duff Nolan, violated the South Carolina Rules of Professional Conduct 8.4(d) Prohibitions. [Doc 91]. The District Court did not make any specific findings of bad faith on the part of Mr. Nolan and the sole evidence in the record is that he engaged the services of an independent contractor to conduct an investigation to determine if sufficient basis existed for initiating litigation against the Defendant for violations of the Plaintiffs' rights under the PVPA. [Doc 92, Transcript of Hearing on Motion for Sanctions, p. 18, lines 17-20; p. 22, line 14 through p. 23, line 13]. The sole factual information before the District Court was that Mr. Nolan utilized the services of Mr. Zelotis Wofford and had done so on other occasions. [*Id.* at p. 22, line 14 through p. 23, line 13]. It was left to the discretion of Mr. Wofford whether or not to record a conversation

and he had not in the past always recorded and did not in the present action record all encounters with the Defendant. [*Id.* at p. 23, line 14 through p. 24, line 7]. Furthermore, he was sent on a fact gathering investigative process to determine if any violations of the rights of the Plaintiffs under the PVPA existed. [*Id.* at p. 22, line 14 through p. 23, line 13]. His first encounter with the Defendant in September, 2007 raised suspicions, but did not clearly establish that a violation occurred as the Defendant was representing to the world and to the Undercover Investigator that it had developed a new variety known as Carolina Green which it represented as being the same thing as *TifBlair* on one occasion and on another as having some *TifBlair* in it, but overall it was a better grass. [TT, p. 332, line 6 through p. 333, line 25; Tape-recording of telephone conversation on October 29, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as TTG 1-00216, proffered at TT, p. 770, line 14 through p. 774, line 5]. Thereafter, another investigation took place in 2008 wherein it was represented that the subject grass being sold by the Defendant was *TifBlair*, that the Defendant had raised, cut and sold nothing but *TifBlair* for over ten (10) years, and furthermore representation was made that although the invoice said centipede, it was in fact *TifBlair* and had just been renamed Carolina Green. [Tape-recording of personal visit of October 29, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG 01-00161; Tape-recording of personal visit of October 30, 2008, pp. 1, 4, 5, disclosed in

Plaintiffs' Initial Disclosures as Bates Numbers TTG 01-00220, 01-00223, and 01-00224; Tape-recording of personal visit of October 31, 2008, p. 3, disclosed in Plaintiffs' Initial Disclosures as Bates Number TTG 1-00193, proffered at TT, p. 770, line 14 through p. 774, line 5].

The District Court misapplied authority which it referenced as controlling. Specifically, it relied upon old ABA Formal Opinion 337 and certain Supreme Court decisions of South Carolina. As is differentiated in the Brief, the case authority utilized by the Court was not applicable or controlling and the recordings were allowed by statute and new ABA Opinion 441. Furthermore, the parties agreed the case was controlled by Georgia law and there is no question that the surreptitious recordings are proper in Georgia. Additionally, the District Court failed to follow controlling U.S. Supreme Court and Fourth Circuit decisions regarding the imposition of sanctions. Specifically, the Court did not use the authority to impose the least harsh sanction and sanctioned blameless Plaintiffs, all in contradiction of controlling U.S. Supreme Court Authority and Fourth Circuit authority. Accordingly, the District Court not only erred in finding a violation, but it erred in the administration of the sanction after finding the same and for these reasons, should be reversed with the Plaintiffs allowed to have a re-trial with the undercover buys and the testimony relating to the same being admissible into evidence.

15

Additionally, the District Court erred in denying the Motion for Directed Verdict of the Plaintiffs on both the Lanham Act and the PVPA claims. As to the Lanham Act, the Defendant admitted making false statements in advertising when it misrepresented it had a new product called Carolina Green that it utilized to supposedly replace *TifBlair*.[TT pp. 697, 710-711, 716, 779]. In fact, Defendant simply changed its Internet and brochure advertisements that had applied to *TifBlair* which extolled the virtues of that variety; and, the word *TifBlair* was substituted on both with the word Carolina Green.[TT, pp. 708-712, 781].The Defendant admitted the statement that Carolina Green was a new variety was a false statement and as such, should have been a directed verdict on liability as to the issues under the Lanham Act. Also, Defendant admitted to selling *TifBlair* without the required PVPA tags and certification and judgment as a matter of law was in order. [TT, pp. 778, 791-794, 796].

Furthermore, the District Court erred in excluding the testimony of Mr. Donald Davis. The District Court based its exclusion on the grounds that he used a university study upon which to base his opinion. Such matters go to the weight of the testimony and not the ability to introduce the same into evidence and error was committed at that juncture.

Accordingly, the District Court committed numerous errors which are reversible and mandate that the decision be reversed, that directive be made to

allow into evidence the tape recordings of the Undercover Investigator and related evidence, allow the testimony of Mr. Donald Davis to be presented to a jury, and furthermore that direction should be made that the directed verdict in favor of the Plaintiffs should be granted on the Lanham Act and PVPA as to liability.

## ARGUMENT AND CITATION OF AUTHORITY

**1.     Interlocutory Order filed May 3, 2011 [Doc 91].**

The District Court erred in finding that Plaintiffs' counsel violated South Carolina Rule of Professional Conduct 8.4(d) and erred by imposition of a sanction excluding from evidence the tape-recordings as set out in its Interlocutory Order filed on May 3, 2013 [Doc 91], which held in pertinent part as follows:

> "I further find that by causing the secret tape recordings of Defendant's employees that Plaintiffs' counsel violated South Carolina Rules of Professional Conduct 8.4(d)'s prohibition of conduct involving dishonesty, fraud, deceit or misrepresentation as that rule has been interpreted by the South Carolina Supreme Court. . .
>
> I find pursuant to the court's inherent power to impose order and compliance with lawful mandates that Plaintiffs' counsel shall not be permitted to utilize the tape recordings as evidence in this action. . . . Furthermore, I am ordering that Plaintiffs be prohibited from offering testimony about the conversations that were contained in the tape recordings.  But other evidence that has been obtained as a result of Plaintiffs' investigation, including, for example, samples of grass that the Defendant's employees sold, investigators or things of that nature would be relevant."

This Court applies the procedural law, including standards of review, of the regional circuit where appeals from the district court would normally lie.  *Odetics,*

*Inc. v. Storage Tech. Corp*, 185 F.3d 1259, 1276 (Fed. Cir. 1999); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1296 (Fed. Cir. 2012). Therefore, as required by F.R.A.P. 28(a)(8)(B) and Local Rule 28, Appellant states as follows: The Fourth Circuit Court of Appeals reviews the imposition of sanctions and the exclusion of evidence for an abuse of discretion. *Odetics* at 1276 *citing Brown v. McLean*, 159 F. 3d. 898, 904 (4th Cir. 1998) (as to evidentiary rulings); *Buckley v. Mukasey*, 538 F.3d 306, 317 (4th Cir. 2008) (as to evidentiary rulings); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002) (as to rulings imposing Rule 11 Sanctions). *See alsoResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 863 (Fed. Cir. 2010). Pursuant to the decisions of the Fourth Circuit, a District Court commits abuse of discretion 1) where the District Court's decision is based on an erroneous construction of the law; or 2) where the District Court's decision is based on an erroneous factual finding. *In re Wray*, 433 F.3d 376, 378 (4[th]Cir. 2005); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4[th]Cir. 2002); *Brown v. Nucor Corp.,* 576 F.3d 149, 161 (4[th]Cir. 2009) *citing Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4[th]Cir.1976); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). *SeeEvans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4[th]Cir. 2008) (noting that a District Court may abuse its discretion in a range of situations, including an "'erroneous view of the law,' 'patently arbitrary application of the controlling law,' 'clearly erroneous

18

assessment of the evidence,' judgment call outside 'the range of choices permitted,' and error 'in the weighing process by which [discretion is] exercised' as factors cabining the deference owed on abuse of discretion review.").  In the instant case, the District Court abused its discretion in issuing the Interlocutory Order filed on May 3, 2013 [Doc 91] because such Order was based on an erroneous construction of the law and was not supported by factual evidence in the record.

**A.    The District Court erred in issuing its Interlocutory Order [Doc 91] as such Order was based on an erroneous construction of the law.**

The District Court ruled that counsel for Plaintiffs violated South Carolina Rule of Ethics 8.4 and, in light of such violation, prohibited the use of the above-described tape-recordings or any testimony connected with such recordings at trial. However, such decision was based on an erroneous construction of law.The applicable law was presented to the District Court in Plaintiffs' Response to Defendant's Motion for Sanctions filed with the District Court on February 8, 2011 [Doc 82] and at the hearing on Defendant's Motion for Sanctions.  However, the District Court based its decision on other, wholly inapplicable and distinguishable caselaw and misapplied the facts.

### i. Plaintiffs' Use of Undercover Investigator Zelotis Wofford was not prohibited by applicable law.

The use of undercover investigators such as Zelotis Wofford and the recording of conversations occurring in the course of an investigation is a widespread supported practice. *See* ABA Formal Ethics Opinion 95-396 which states that "[t]here is no doubt that the use of investigators in civil and criminal matters is normal and proper." Investigators, sometimes referred to as "testers", are commonly used to investigate unlawful practices, such as housing discrimination, employment discrimination, or trademark infringement. Such use has been acknowledged and allowed by the U.S. Supreme Court in *Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982) (as to claims under §804(d) of Fair Housing Act). *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979). The Fourth Circuit Court of Appeals has also accepted the use of "testers." *Williams v. Staples, Inc.*, 372 F.3d. 662 (4th Cir. 2004) (testers used in Civil Rights Complaint under 42 U.S.C. §1981); *Clark v. Maryland Hospitality, Inc.*, 972 F.2d. 338 (4th Cir. 1992) (testers used in Civil Rights Complaint under 42 U.S.C. §1981 and 42 U.S.C. §2001a et. seq.)

In *Gidatex, S.r.L. v. Campaniello Imports, LTD*., 82 F.Supp.2d. 119 (S.D.N.Y. 1999), the District Court for the Southern District of New York addressed the issue of investigations and recordings made in a trademark infringement action. The Court in *Gidatex* held that "hiring investigators to pose

20

as consumers is an accepted investigative technique, not a misrepresentation" and, further, that ethics rules should not govern in the context of unfair business practices. *Id*. The Court recognized that, without such investigations, it would likely be impossible to discover and prove some types of infringement actions:

> "[E]nforcement of the trademark laws to prevent consumer confusion is an important policy objective, and undercover investigators provide an effective enforcement mechanism for detecting and proving anti-competitive activity which might otherwise escape discovery or proof. It would be difficult, if not impossible, to prove a theory of "palming off" without the ability to record oral sales representations made to consumers. Thus, reliable reports from investigators posing as consumers are frequently recognized as probative and admissible evidence in trademark disputes."

Such considerations emphasize the necessity of an investigation in the instant case where Defendant engaged in an intentional and elaborate scheme to sell a patent-like product, *TifBlair*, under a false name, market it in a false way, and to hide such illegal activities and violate Plaintiffs' PVPA rights.

It is clear that prior to the actions in question and the ruling of the District Court that Formal Opinion 337 relied upon by the District Court was replaced by the ABA with Formal Opinion 01-422. Formal Opinion 01-422 provides that where non-consensual recording of conversations is permitted by the law of the jurisdiction where the recording occurs, a lawyer does not violate the Model Rules merely by recording a conversation without the consent of other parties to the conversation. A vast majority of states allow one party consent surreptitious

recordings and, in the absence of a violation of a law of a state, conclude that there is no ethical problem regarding undercover investigators under any applicable ethical rule to secure facts and information in order to make a determination as to the existence of violations of any law.  As the ABA in its revocation of Formal Opinion 337, the overwhelming majority of states allow recording with the consent of one party.  Since Georgia (O.C.G.A. §16-11-66(a)) and South Carolina (S.C.A. §17-30-30) allow to one party consent, the court must rely solely upon a perceived ethical violation.  Thus, there was no violation of South Carolina law in the Investigator's recordings.

### ii.  Applicable Georgia law does not prohibit the tape recordings at issue in the instant case.

The present action is governed by Georgia law, as agreed by the parties.[*Section 13.1 of the Sub-license Agreement attached to Doc 1 as Exh. A*]. The District Court failed to apply applicable Georgia law discussed below and thereby committed an error of law.

Georgia Courts have not adopted the ethical prohibition on surreptitious recordings as set out in now abrogated ABA Formal Opinion 337 (1974). Applicable Georgia law is clear that the Undercover Investigator was allowed to record his conversations with Defendant.  O.C.G.A. §16-11-66 expressly provides that the act of recording telephonic or oral communications is not a violation of Georgia law where one party has consented to such recording, even where that

22

party conducts such undercover recording.  *See Goodwin v. State*, 154 Ga. App. 46, 50 (1980).

> **iii.** **The authorities relied upon by the District Court in reaching its ruling are inapplicable and do not prohibit the tape recordings at issue in the instant case.**

There is no authority for the proposition that a pre-litigation investigation of the type conducted in the instant case is unethical or impermissible.  In reaching its ruling, the District Court relied on *In re: An Anonymous Member of the South Carolina Bar*, 322 S.E.2d. 667 (S.C. 1984), *In Re Warner*, 335 S.E.2d. 90 (S.C. 1985), and *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d. 693 (8th Cir. 2003).However, such authorities are either inapplicable or wholly distinguishable.

In *In re: An Anonymous Member of the South Carolina Bar*, 322 S.E.2d. 667 (S.C. 1984), the South Carolina Supreme Court held that recordings of conversations with an adversary ***made by an attorney after a cause of action arose*** constituted a violation of the ethical rule prohibiting dishonesty, South Carolina Rule of Professional Conduct 8.4.  That case expressly relied on former ABA Formal Opinion 337 (1974), which was withdrawn in 2001 by Formal Opinion 01-422.  The current version of ABA Formal Opinion 01-422 provides as follows:

> "[a] lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation does not necessarily violate the Model Rules."

23

*In Re Warner*, 335 S.E.2d. 90 (S.C. 1985) involved an attorney providing his client with a means to secretly record a judge during the course of litigation. *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d. 693 (8th Cir. 2003) also involved recordings made following the filing of a cause of action -- during the discovery period. Further, evidentiary sanctions were granted in *Midwest Motor Sports* in part because counsel violated Model Rule of Professional Conduct 4.2 which prohibited contact with represented parties. None of such conduct is an issue in the instant case and none of the decisions that the District Court utilized have any factual connection or application to the present action.

Unlike the above cases relied on by the District Court, the recordings at issue in the instant case occurred pre-litigation. Such recordings were made in September of 2007 and October of 2008, many months before Plaintiffs filed their Complaint on October 28, 2009. [*Supra* Statement of Facts]. Further, unlike the cases relied on by the District Court, none of the recordings in the instant case were made by an attorney or at the express instruction of an attorney. All recordings at issue were made by Zelotis Wofford, an Undercover Investigator hired by Plaintiffs' lead counsel Nolan Law Group, PLLC. Such recordings were made on Mr. Wofford's own initiative and at his discretion, not at the direct request or instruction of Nolan Law Group, PLLC. [*See* P. 18, lines 23-25 and

24

p.19, lines 1-18, Transcript of Hearing on Defendant's Motion for Sanctions, May 3, 2011, Doc 92].

      **iv.**    **The District Court Disregarded Controlling Authority in Issuing Its Sanction Excluding the Tapes and Testimony Regarding the Undercover Buys**

While the District Court does possess the inherent power to discipline an attorney and to prevent any unprofessional conduct by attorneys who appear before it, those powers are not without constraint.  In fact, it has been stated that the inherent power to impose sanctions must be exercised with the greatest restraint and caution, and then only to the extent necessary.  *Byrd v. Hopson,* 108 F.App'x at 749, 756-57 (4th Cir. 2004) *citing Byrne v. Nezhat,* 261 F.3d 1075, 1132n 112 (11th Cir. 2001).  Furthermore, it is clear that the threshold for imposing sanctions is high and that the courts should deploy the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes.  *Byrd v. Hopson,* 108 F.App'x at 749, 756-57 (4th Cir. 2004).

In addition, sanctions should only be imposed against an attorney under the inherent power of the court if the court makes a specific finding that the attorney acted in bad faith.  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991); *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 753, 767-68 (1980); *Kilborn v. Bakhir,* 70 F. App'x 692, 693-94 (4th Cir. 2003).  The Courts have stated that bad faith is not simply bad judgment and negligence but rather that it implies conscious doing of a

25

wrong because of dishonest purpose or moral obliquity. *Id.*; *United States v. Gilbert,* 198 F.3d 1293, 1299 (11th Cir. 1999). Generally, the Courts have found sanctions not to be warranted against an attorney who acts on an incorrect interpretation of the law, so long as he held a reasonable argument for his interpretation of the law that was motivated by a proper purpose. *Id.* No such requisite evidence or finding of bad faith exists in the record. In the present action, the surreptitious recordings were made by an Undercover Investigator in an attempt to determine whether or not the Defendant was violating rights of the Plaintiffs under specific Federal laws. Respectfully, the prevailing understanding in the legal profession is that a public or private lawyer may use an undercover investigator to detect ongoing violations of law and that the same is not ethically proscribed especially where it would be difficult to discover violations by other means. *Cartier, a division of Richemont, N.AM. Inc. v. Symbolix, Inc.*, 386 F.Supp.2d 354, 362 (S.D.N.Y. 2005); *Gidatex S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 119, 123 (S.D.N.Y. 1999). Those cases reflect that in the areas of patent infringement, trademark infringement, and arguably in the area of the PVPA which is patent-like in nature, the only way to ascertain the true activity of the violator is to participate in an undercover investigation.

Although the District Court noted that there was no evidence that the Plaintiffs themselves were guilty of misconduct and thus were blameless in the

26

situation, the District Court proceeded to disregard the constrictions of *U.S. v. Shaffer Equipment, Co.,* 11 F.3d 450 (4th Cir. 1993) and *Byrd v. Hopson, supra,* and sanction the Plaintiffs, rather than their attorney, by excluding from evidence the undercover buys of the Plaintiffs' protected variety of turfgrass, *TifBlair*. As demonstrated herein, Defendant proceeded to impeach witnesses of the Plaintiffs with the cross-examination that there was no proof that the grass purchased was *TifBlair*. [TT, pp. 339, 357, 1169-1173]. In fact, proof existed that Defendant sold *TifBlair* via the undercover tape recordings wherein it is admitted that *TifBlair* was being sold to the Undercover Investigator. [*Supra* Statement of Facts]. The District Court notes in its ruling that one should not dismiss a case under *U.S. v. Shaffer Equipment, supra* with blameless clients, but the ruling of the District Court was a *defacto* dismissal of Plaintiffs' claims. Clearly, it was an abuse of discretion not to resort to a lesser sanction such as a fine against the attorney the District Court felt was offending. It should be noted that the Plaintiffs do not agree that the attorney was offending as alleged, but even if such offense existed, an inappropriate use of the District Court's inherent power of sanction was utilized to neuter the case of the Plaintiffs in chief and to give the Defendant an undue and unfair advantage on cross-examination. Defendant actually presented incorrect testimony via its corporate designee who was not subject to an appropriate cross-

27

examination due to the exclusion of the tape recordings as to actual sales of *TifBlair*.[TT pp. 697, 710-711, 716, 777, 779].

**B.** **The District Court's finding that Plaintiffs' Counsel violated South Carolina Rule of Professional Conduct 8.4(d) was not supported by evidence.**

The District Court ruled that counsel for Plaintiffs violated South Carolina Rule of Ethics 8.4 and, in light of such violation, the Court prohibited the use of the above-described tape-recordings and testimony regarding the undercover buys by Plaintiffs at trial. However, the determination that Plaintiffs' counsel violated South Carolina Rule of Ethics 8.4 was not supported by evidence before the District Court. South Carolina Rule of Professional Conduct 8.4(d) provides in pertinent part as follows:

> It is professional misconduct for a lawyer to:
> (a)    violate or attempt to violate the Rules of Professional Conduct, **knowingly assist or induce** another to do so, or do so through the acts of another; . . .
> (d)    engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(*emphasis added*). The District Court found that Plaintiffs' counsel violated Rule 8.4(d) in light of the acts of the Undercover Investigator. However, the District Court had no evidence before it that Plaintiffs' counsel "knowingly assist[ed] or induce[d]" Mr. Wofford to record his conversations with Defendant. At the hearing on Defendant's Motion for Sanctions, Plaintiffs' counsel stated to the Court that Mr. Wofford was an independent contractor and acted on his own behalf

28

and in his own discretion, that Plaintiffs' counsel did not instruct Mr. Wofford to record his conversations with the Defendant, and that Plaintiffs' counsel was not aware whether or not Mr. Wofford intended to record such conversations. [*See* P. 18, line 23 through p. 19, line 5; p. 26 lines 22-25, Transcript of Hearing on Defendant's Motion for Sanctions, May 3, 2011, Doc 92]Further, when Plaintiffs' counsel first engaged Zelotis Wofford to investigate the Defendant, he was not even aware of the state in which the Defendant resided. [*Id*. at p. 21, lines 3-9]. Such testimony was not disputed by Defendant.

Defendant introduced no evidence establishing that Plaintiffs' counsel "knowingly assist[ed] or induce[d]" the complained of recordings. Therefore, there is no evidence in the record to support the District Court's decision that Plaintiffs' counsel violated Rule 8.4 via the acts of Zelotis Wofford. Such ruling was based on an erroneous factual finding. Therefore, the District Court's ruling excluding the tape recordings, which was based on a finding that Plaintiffs violated Rule 8.4, constituted an abuse of discretion.

## C. The District Court's erroneous exclusion of the tape recordings was harmful to Plaintiffs' substantial rights and should be reversed.

Once error is shown, the exclusion of evidence or imposition of sanctions is cause for reversal if such exclusion affected a party's substantial rights. *Odetics* at 1276 *citing Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1135

(4[th]Cir.1988) (citing Fed.R.Civ.P. 61); *Buckley v. Mukasey*, 538 F.3d 306, 317 (4[th]Cir. 2008).

In the instant case, the District Court's ruling imposing sanctions ultimately formed the basis for the District Court's grant of Defendant's Motion in Limine which excluded from evidence all tape recordings of the undercover purchases and all related evidence. Such recordings conclusively establish via admission that Defendant marketed and sold *TifBlair* centipede grass in violation of Plaintiffs' rights under the PVPA, Lanham Act, and sub-license agreement between the TTG and Defendant [TT, p. 302]. The recordings show by admission that Defendant only sold *TifBlair,* and no other variety of centipede, during the time periods at issue. [TT, pp. 737-746; Exhs 1-TB-7, 10, 14, 15, 19, 23, 25, 32, 34, 37 and 40]. Further, Defendant's financial records at trial establish that it sold millions of dollars in centipede during the time periods at issue. [TT, pp. 667-671]. As established by the undisputed testimony at the trial of this matter, there is no genetic test available to determine whether a particular seed is the protected variety of turfgrass. [TT, p. 1171]. Therefore, the excluded recordings contain the strongest direct evidence that Defendant unlawfully sold the protected variety. By exclusion of these numerous admissions by agents of the Defendant, the District Court not only neutered the case of the Plaintiffs, but denied the Plaintiffs their constitutional right to a thorough cross-examination of the Defendant. *Alford v.*

30

*United States*, 282 U.S. 687, 691-692 (1931) ("[T]o say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial."); *United States v. Jordan*, 466 F.2d 99, 101 (4[th]Cir. 1972); *Weekley v. Thomas*, 63 F.2d 988, 989 (4[th]Cir. 1933); *Pullman Co. v. Hall*, 55 F.2d 139, 141 (4[th]Cir. 1932). In fact, the Defendant's corporate designee testified, contrary to the statements of its employees. The corporate officer testified that the company destroyed its sole remaining *TifBlair* field by May of 2007. [TT, p. 906]. He further testified that any *TifBlair* sold after that date would have been purchased from an entity known as Green Acres. [TT, p. 777]. The invoices from Green Acres to the Defendant admitted into evidence clearly reflect that no purchases were made by Defendant from Green Acres of *TifBlair* turfgrass after March of 2007[TT, p. 746; Exhs G1-G47]. However, Defendant's invoices admitted into evidence reflect that sales occurred throughout the year and into the fall of 2007. [TT, pp. 37-746; Exhs 1-TB-7, 10, 14, 15, 19, 23, 25, 32, 34, 37 and 40]. Turfgrass can only live a matter of days after it is cut for sod so the subject grass could not have been grass purchased from Green Acres. The company president testified without fear of cross-examination at trial that his company did not sale *TifBlair* to anyone except through Green Acres purchases and that the documents

31

in question that reflected *TifBlair* were simply the result of an employee pushing the wrong button. [TT, p. 651]. Since the District Court had denied Plaintiffs the opportunity to mention either the tapes of the undercover purchases or even recollect the conversations through direct personal testimony of the undercover investigator, the Plaintiffs were denied the opportunity to point to the four (4) or five (5) occasions wherein employees of the Defendant stated they were in fact selling *TifBlair*, sold the same and charged for it, and even invoiced it at least one (1) occasion as *TifBlair* to the Undercover Investigator and could not push the *TifBlair* button on their computer for a receipt. Furthermore, the tapes revealed that the Undercover Investigator was told that he was getting *TifBlair* and that *TifBlair* was all the Defendant had grown, cut and sold for over ten (10) years. At a minimum, these matters should have been allowed to be presented to the jury to show the contradictory nature of statements of representatives of the Defendant and the potential lack of veracity of the company's president who testified un-feathered by the fear of a thorough cross-examination. At the most extreme, the absence of the undercover recordings allowed the company president to offer arguably perjurious statements as direct and uncontradicted evidence.

In light of the significance of the recordings as clear evidence of Defendant's wrongful conduct, a prohibition on the use of such recordings substantially impaired Plaintiffs presentation of its case.

32

## 2.    Interlocutory Order filed March 14, 2013 [Doc 173].

On March 14, 2013, the District Court issued an Order granting Defendant's Motion in Limine and excluding Plaintiffs' damages expert witness, Donald Davis. [Doc 173].

"Abuse of discretion is the proper standard of review of a district court's evidentiary rulings." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 146 (1997).

As an initial matter, it is important to note that the District Court found Davis to be qualified to render an expert opinion on damages in this case. [Doc 173, p. 4]. However, the District Court determined that Davis's opinion was unreliable and excluded the witness on those grounds. [Doc 173]. Specifically, the District Court made its ruling based upon the following factors: 1) Davis's determination that Plaintiffs were entitled to damages for the unlawful sales of *TifBlair* measured by a royalty rate equal to fifty-three percent (53%) of the retail selling price rather than the contracted upon royalty rate of seven percent (7%); 2) Davis's opinion being based in part on a fictional academic study concerning a centipede sod farm conducted by Louisiana State University which did not account for adjustments based upon economic circumstances; 3) Davis's acknowledgment that he had not reviewed data relative to Defendant's operations or accounted for economic circumstances relevant to centipede sod production and sales for the years calculated in the projections; and 4) Davis's opinion was not based on

33

accepted methodology, has not been subjected to peer review or publication, and has not been generally accepted within the relevant scientific community. [Doc 173, pp. 5-6]. Plaintiffs respectfully contend the District Court erred in its findings, exceeded its role as "gatekeeper," and abused its discretion in ruling to exclude Plaintiffs' damages expert.

Federal Rule of Evidence 702 provides in part that a witness qualified as an expert may testify as to an opinion if, 1) "the testimony is based on sufficient facts or data;" 2) "the testimony is the product of reliable principles and methods; and" 3) "the expert has reliably applied the principles and methods to the facts of the case."

In determining the admissibility of expert testimony, the district court acts as a "gatekeeper" to ensure that any scientific testimony "is not only relevant, but reliable. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 137 (1999). However, "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness. *i4i Ltd. P'ship.*, 598 F.3d at 854.

"When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility. *i4i Ltd. P'ship.*, 598 F.3d at 852.

34

It is well-settled that the fifteen factors set forth in *Georgia Pacific* serve as a guide in determining a reasonable royalty rate in a patent case. *Georgia Pacific v. United States Plywood Corp.* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). The evidence in the record demonstrates, and the District Court found that Davis's opinion "on the royalty adjustment was based on the facts established in *Georgia-Pacific Corp*[.]" [Doc 173, p. 5; Doc 146-1, p. 60, line 3-p. 113, line 4).

In contradiction to the District Court's finding that Davis's opinion "has little or no basis in the actual facts of this case[.]" [Doc 173, p. 6], the record reflects that Davis reviewed Defendant's royalty documents for 2005-06, production summaries and calculations of royalty financial documents, which provided information regarding *TifBlair* production amounts, sales, sales volume, sales price, and production acres. Davis requested data regarding Defendant's sales of *TifBlair* for 2007-10, but that the data was not available for review because the data did not exist. Davis addressed variables including inflation and time value of money and made determinations based upon historical data. Davis also analyzed the reported amount of *TifBlair* sold prior to the license termination, and used the information to project the sales of *TifBlair* for the years 2007-2010, when Defendant maintain it sold no *TifBlair*. Davis also testified that data regarding Defendant's sale price and acreage was reasonable and comparable to the data in

the fictional study. [Doc 146-1, p. 22, lines 9-17; p. 23, lines 18-24; p. 26, line 3-p. 27, line 16; p. 88, lines 7-13; p. 142, lines 21-23; p. 151, lines 7-16].

Although the District Court takes issue with Davis not having reviewed data concerning the Defendant's operations [Doc 173, p. 5], Davis established that information relative to the production sales, costs, and profits of *TifBlair* projected for 2007-10 did not exist as Defendant maintains it was not producing and selling the product. [Doc 146-1, p. 93, lines 11-p. 94, line 3]. Accordingly, Davis could not have reviewed such data in rendering his opinion.

Addressing the District Court's erroneous finding that Davis's royalty rate determination had no basis in established methodology [Doc 173, p. 5], Davis stated the factors set forth in *Georgia-Pacific Corp* are used to determine a reasonable royalty in an arms-length negotiation between two willing parties in a hypothetical negotiation. Under those circumstances, Davis opined the reasonable royalty rate would be seven percent (7%). [Doc 146-1, p. 43, line 21-p. 44, line 20]. However, under the present facts, the parties were not engaged in a willing arms-length negotiation, but rather the Defendant was infringing on Plaintiffs' rights through the unlicensed sale of *TifBlair*. Davis stated the reasonably royalty would need to account for a licensor giving to the infringer all rights to the protected variety allowing it to be sold without quality checks. Davis opined that his adjusted reasonable royalty rate of fifty-three percent (53%) was the rate

36

determined to get a licensor "who will not give away their product . . .to give it away." [Doc 146-1, p. 44, lines 4-10; p. 47, line 22-p. 48, line 1].

Although Davis opined that his method of calculating the royalty rate in this case was novel, he explained that there were no comparable reasonable royalties in the market because "anything in the market now will be an agreed-upon royalty based on a mutual meeting of the minds and no compulsory agreements . . .so [the rates] would not compare to the royalty rate . . ." established under the facts in this case. [Doc 146-1, p. 48, line 21-p. 49, line 6].

Although the District Court correctly finds that Davis's novel methodology has not been subjected to peer review or publication and has not been generally accepted within the relevant scientific community, the District Court's findings failed to take into account the evidence in the record as follows: 1) Davis has discussed his theory at forensic conferences; 2) Davis has researched the issue as to the extent research is available; and 3) Davis has not found any other experts in his field that address this issue other than experts for Defendant. [Doc 146-1, p. 85, line 19-p. 86, line 6; p. 135, lines 7-19]. Accordingly, Plaintiffs should not be penalized by having Davis's opinion excluded because his theory has not been subjected to peer review when there are no other experts in his field that address this issue except those offering counter opinions.

37

Based upon the evidence in the record, Davis soundly explained his methodology, he relied upon evidence sufficiently related to the present case, the District Court found that Davis was qualified as an expert to give an opinion and, therefore, the District Court abused its discretion in excluding Davis's opinion as it met the minimum requirements of Fed. R. Evid. 702 and *Daubert*. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d at 852 (finding "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility); *Id.* at 856 (stating "it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony.").

**3. The District Court Erred in Granting Defendant's Motion for Judgment in Their Favor Regarding Plaintiffs' Claims for Actual Damages under the Plant Variety Protection Act and the Lanham Act.**

This Court applies the procedural law, including standards of review, of the regional circuit where appeals from the district court would normally lie. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999). The Fourth Circuit reviews the award of a Motion for Summary Judgment de novo, employing the same standards as the district court. *Dixon v. Edwards*, 290 F.3d. 699, 710 (4th Cir. 2002).

38

In its Interlocutory Order filed on March 18, 2013 [Doc 174], the District Court erroneously granted Summary Judgment in favor of the Defendant on Plaintiffs' claims for actual damages on their causes of action under the PVPA and Lanham Act. Specifically, the District Court found it "appropriate to grant Defendant's request for Judgment in their favor on actual damages." [Doc 174 p. 8]. However, the District Court denied Summary Judgment as to liability on all claims. [Doc 174, p. 9] Later, on August 8, 2013, the District Court entered its Order on Defendant's Motions in Limine [Doc 181]. The District Court attempted to correct its erroneous ruling on Summary Judgment as to Plaintiffs' claim for actual damages and held that "a jury may consider the royalty rate of seven percent (7%) as provided in the sub-license agreement." [Doc 198, p. 3]. As shown below, the District Court erred in limiting the jury's consideration of a royalty rate of seven percent (7%).

Pursuant to the PVPA, "upon finding an infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a **_reasonable royalty_** for the use made by the variety of the infringer . . ." 7 U.S.C. §2564. (*emphasis added*). Even if the District Court were to consider that the seven percent (7%) was an established reasonable royalty rate, "[a]lmost all courts recognize, however, that an established royalty rate may be too low to be reasonable under certain circumstances." *Mobile Oil Corp. v. Amoco Chemical,*

*Corp.,* 915 F.Supp. 1333, 1343 (D.Del. 1994). As a result, although there was a

prior sub-license agreement setting a reasonable royalty rate at seven percent (7%),

which is arguably an established rate, the District Court nevertheless should not

have limited the jury's consideration of merely seven percent (7%). As explained

in *Studiengesellschaft Kohle, mbH v. Dart Industries, Inc.*, 856 F.2d 1564, 1568

(Fed. Cir. 1988), it is "error for basing a reasonable royalty" on the royalty in

license agreement which was the result of a negotiated paid-up license. This rule

"applies with greater force … [regarding] the determination of a floor at the

hypothetical negotiation." *Id.* In the instant case, the 7% royalty rate was based

on an agreement when Defendant was actually licensed to sell the patented

product. Accordingly, that rate may be used as a floor rate, but under the

foregoing authority, it is clear the District Court erred in limiting the rate as it did.

With regard to the Lanham Act, the District Court likewise erred in granting

Defendant's request for Judgment in their favor on the actual damages. However,

in an attempt to clarify or correct that error, the District Court held in its Order

dated August 9, 2013 [Doc 198] that "Plaintiffs may introduce evidence in support

of their claims for equitable relief to include Carolina Farms' profits, Plaintiffs'

requested permanent injunction, and Plaintiffs' request for costs and attorneys'

fees." [Doc 198, p. 5]. Therefore, the District Court's Interlocutory Order filed on

March 18, 2013 [Doc 174], erroneously granting Summary Judgment in favor of

the Defendant on Plaintiffs' claims for actual damages on their causes of action under Lanham Act, should be reversed or reformed to reflect the District Court's holding set forth in its Order dated August 9, 2013 [Doc 198].

**4.      Part of Interlocutory Order filed August 9, 2013 [Doc 198] Excluding Evidence of Recordings which Relate to Order [Doc 91] above.**

On August 9, 2013, the District Court issued an Order which granted in part Defendant's Motion in Limine [Doc 198].  The District Court erred in Section III of such Order by excluding evidence obtained by the Undercover Investigator, including tape-recordings of infringing sales.  As discussed in Section 1 above, the decision to exclude evidence is reviewed for abuse of discretion, which may be shown where the District Court's decision is based on an erroneous construction of law or an erroneous factual finding.  *Odetics, Inc. v. Storage Tech. Corp*, 185 F.3d 1259, 1276 (Fed. Cir. 1999);*Brown v. Nucor Corp.,* 576 F.3d 149, 161 (4[th]Cir. 2009).  The District Court's ruling imposing sanctions ultimately formed the sole basis for the District Court's grant of Defendant's Motion in Limine which excluded from evidence all tape recordings.  Plaintiffs' arguments contained in Section 1 above are hereby incorporated herein.  As discussed therein, such Order imposing sanctions was based on an erroneous interpretation of applicable law and an erroneous factual finding and should therefore be reversed.  Consequently, the District Court's Order granting in part Defendant's Motion in Limine should also be reversed.

41

5.    **Interlocutory Order filed August 9, 2013 [Doc 200] to the Extent the Appellate Court would Conclude the Issues Raised and Ruled upon in said Order were not Preserved for Appellate Review Since the Evidence was not Proffered at Trial.**

It is well settled that a party can claim that an error was made in ruling to admit or exclude evidence "if the error affects a substantial right of the party and … if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." *Fed.R.Evid. 103(a).* However, the Federal Rules attempt to prevent repetitious argument and preserve judicial economy by stating that, "[o]nce the court rules *definitively on the record--either before or at trial--*a party need not renew an objection or offer of proof to preserve a claim of error for appeal." *Fed.R.Evid. 103(b)* (emphasis added).

Although renewing an objection or offer of proof may be prudent, "[w]hen the ruling is definitive, a renewed objection or offer of proof at the time the evidence is to be offered is more a formalism than a necessity." *Wipf v. Kowalski,* 519 F.3d 380, 385 (7[th]Cir. 2008)*citing* Fed.R.Evid. 103, Advisory Comm. Notes, 2000 Amendment (plaintiff made a motion in limine, but the court denied the motion; because the court made 'definitive ruling' on the admission of that evidence, plaintiff preserved objection regardless of whether she renewed it at trial); Christopher B. Mueller & Laird C. Kirkpatrick, EVIDENCE10, 21 (4[th]ed.

42

Aspen Publishers 2009).*See also Fuesting v. Zimmer, Inc.,* 448 F.3d 936, 940 (7[th]Cir. 2006); *Olson v. Ford Motor Co.,* 481 F.3d 619, 629 n. 7 (8[th]Cir. 2007).

Here, the District Court was made aware of the substance of the recorded evidence multiple times. First, transcripts of the tapes were submitted to all parties and the District Court as part of Plaintiffs' initial disclosures. *Rule 26(a)(3) Pretrial Disclosures* [Doc 188].Secondly, the District Court held a hearing to determine whether the recordings violated the South Carolina Rules of Professional Conduct 8.4. *Hearing Transcript* [Doc 92]. Through the course of this hearing, the District Court was made aware of what was contained in the recordings and their importance to the Plaintiffs' right to a fair trial. *Hearing Transcript* [Doc92]. The District Court was also made aware of the substance of the recordings by Plaintiffs' Response to Defendant's Motion in Limine. *Response in Opposition to Defendant's Motion in Limine to Exclude Plaintiffs' Expert* [Doc 156]. Moreover, the District Court heard argument and even described the substance of the recorded evidence itself when it ruled on Defendant's Motion for Summary Judgment. *Order and Opinion Partial Granting and Denying Defendant's Motion for Summary Judgment* [Doc 174]. In addition to the above, the parties discussed the contents of the recordings at trial. [TT pp. 1174-1184]. Clearly, the District Court was aware of the substance of the recorded evidence.

The District Court's Interlocutory Order is considered a definitive ruling under Federal Rule of Evidence 103(b).[Doc 200]. The District Court's ruling left no issue for later decision nor did it reserve ruling on: (i) whether a jury may consider the royalty rate of seven percent (7%); (ii) whether Plaintiffs may introduce evidence that support their equitable claims; (iii) whether the recordings obtained by Plaintiffs' expert could be used at trial; and (iv) whether Plaintiffs must provide computation for breach of contract damages.[Doc 200].

Therefore, Plaintiffs were not required to renew their objection of offer of proof at trial in order to preserve their right to appeal the issues raised in the August 9, 2013 Interlocutory Order because the District Court was aware of the substance of the recordings and made a definitive ruling on the issue.

**6.    Final Judgment filed September 5, 2013 [Doc 227] to include but not limited to the following:**

**A.    The denial of Plaintiffs' Motion for Directed Verdict on the Plant Variety Protection Act and Lanham Act claims.**

The Fourth Circuit reviews the denial of a Motion for Directed Verdict *de novo*. *Perry v. Otis Elevator Co*., 21 F.3d 423 (4th Cir. 1994); *AMC Mech. Contractors, Inc. v. Marriott Corp*., 896 F.2d 545 (4th Cir. 1990); *Gairola v. Com. of Va. Dep't of Gen. Servs*., 753 F.2d 1281, 1285 (4th Cir. 1985). Therefore, the reviewing court must employ the same standard which should have been employed by the District Court in ruling on a Motion for Directed Verdict. *Id*. The standard

44

applied by the District Court is whether there is sufficient and substantial evidence to support a verdict for the party opposing the Motion for Directed Verdict. *Id*. If such evidence does not exist, then a Motion for Directed Verdict must be granted. As held by the Fourth Circuit in *Gairola*, "[u]nless there is "'substantial evidence to support' the verdict asked of the jury,' the reviewing court must direct the verdict upon request." 753 F.2d 1281 at 1285 (4th Cir. 1985) *citing Business Development Corp. v. United States*, 428 F. 2d. 451, 453 (4th Cir. 1970).

On September 3, 2013, Plaintiffs moved for a directed verdict as to their claims under the PVPA and the Lanham Act. [TT, September 3, 2013, p. 1219 line 8 through p. 1226, line 11]. The District Court erred in denying Plaintiffs' Motion for Directed Verdict as to the PVPA and Lanham Act Claims. [TT, September 3, 2013, p. 1229 lines 16-17].

### i. Plaintiffs were entitled to Directed Verdict as to their claims under the Plant Variety Protection Act.

Admissions made by Defendant at the trial of this matter clearly establish that Defendant violated 7 U.S.C.A. §2541 as a matter of law. 7 U.S.C.A. §2541(a)(6) provides in pertinent part as follows:

(a)    Acts constituting infringement

Except as otherwise provided in this subchapter, it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts in the United States: . . .

(6)     dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;

At the trial of this matter, Defendant admitted that it sold *TifBlair* and did not place any of the required PVPA notices on any document given to a purchaser at the time of sale. [TT, October 30, 2013, p. 778, lines 5-15; p. 791 line 20 through p. 792 line 4; p.793 line 24 through p. 794 line 3; p. 796 lines 9-18]. Defendant admitted that such notice was not present on any invoices or paperwork. [*Id* at p. 796 lines 9-18]. Such admissions establish a clear violation of 7 U.S.C.A. §2541(a)(6) and, therefore, entitled Plaintiffs to directed verdict on its PVPA claims.

### ii.     Plaintiffs were entitled to Directed Verdict as to their claims under the Lanham Act.

Admissions made by Defendant Carolina Fresh Farms, Inc. at the trial of this matter clearly establish that Defendant violated 15 U.S.C.A. § 1125 as a matter of law. 15 U.S.C.A. § 1125(a)(1) provides in pertinent part as follows:

**(1)**    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)**    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

46

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

At the trial of this matter, Defendant admitted as follows: that it marketed and sold common centipede grass under the name Carolina Green; that it advertised such variety, via brochures and via Defendant's website, as developed by Defendant and as cold-tolerant with the same qualities of *TifBlair*, the only cold-tolerant centipede grass available at the time; that, in developing advertisement materials for *TifBlair*, that it used its previous advertisements for *TifBlair* verbatim, merely cutting-and-pasting the words Carolina Green in place of the words *TifBlair*; and that such advertisements were false because Defendant did not develop Carolina Green and it was not a new variety. [TT, August 29, 2013, p. 708, lines 4-23; p. 709, line 25 through p. 710 line 2; p. 711 lines 8-19; p. 712, lines 7-12; August 30, 2013, p. 781 lines 14-18].

As explained by Plaintiffs' counsel at the trial of this matter, such admissions establish a clear violation of 15 U.S.C.A. §1125 and, therefore, entitled Plaintiffs to directed verdict on its PVPA claims. [TT, September 3, 2013, p. 1219 line 8 through p. 1226, line 11].

47

**B.** **The District Court Erred in Limiting the Reasonable Royalty to 7% under the Plant Variety Protection Act Claim.**

This Court applies the procedural law, including standards of review, of the regional circuit where appeals from the district court would normally lie. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999). The Fourth Circuit reviews the grant or denial of a Motion in Limine under the abuse of discretion standard of review. *See Buckley v. Mukasey*, 538 F.3d 306, 317 (4th Cir. 2008)

The District Court attempted to clarify its ruling on Summary Judgment as to Plaintiffs' claim for actual damages and held that "a jury may consider the royalty rate of seven percent (7%) as provided in the sub-license agreement." [Doc 198, p. 3]. As shown below, the District Court erred in limiting the jury's consideration of a royalty rate of seven percent (7%).

Pursuant to the PVPA, "upon finding an infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a ***reasonable royalty*** for the use made by the variety of the infringer . . ." 7 U.S.C. §2564. (*emphasis added*). Even if the District Court were to consider that the seven percent (7%) was an established reasonable royalty rate, "[a]lmost all courts recognize, however, that an established royalty rate may be too low to be reasonable under certain circumstances." *Mobile Oil Corp. v. Amoco Chemical, Corp.,* 915 F.Supp. 1333, 1343 (D.Del. 1994). As a result, although there was a

48

prior sub-license agreement setting a reasonable royalty rate at seven percent (7%), which is arguably an established rate, the District Court nevertheless should not have limited the jury's consideration of merely seven percent (7%). As explained in *Studiengesellschaft Kohle, mbH v. Dart Industries, Inc.*, 856 F.2d 1564, 1568 (Fed. Cir. 1988), it is "error for basing a reasonable royalty" on the royalty in license agreement which was the result of a negotiated paid-up license. This rule "applies with greater force … [regarding] the determination of a floor at the hypothetical negotiation." *Id.* In the instant case, the 7% royalty rate was based on an agreement when Defendant was actually licensed to sell the patented product. Accordingly, that rate may be used as a floor rate, but under the foregoing authority, it is clear the District Court erred in limiting the rate as it did.

> **C.** **The denial of Plaintiffs' request to place the recordings of certain undercover turfgrass buys into evidence after Defendant cross-examined Plaintiffs' witness regarding undercover Turfgrass purchases that were not raised on direct examination, thereby opening the door, but preventing Plaintiffs from addressing and clarifying the issues on redirect.**

On September 3, 2013, the District Court erred in issuing its Order which denied Plaintiffs' request to place the recordings of certain undercover purchases into evidence. [TT p. 1184, lines 4-8]. Though the tape-recordings were previously ruled inadmissible by the District Court in its Order on Defendant's Motion in Limine [Doc 91], Defendant opened the door to the admissibility of same at the trial of this matter.

As required by F.R.A.P. 28(a)(8)(B) and Local Rule 28, Appellant hereby states as follows: The Fourth Circuit reviews evidentiary decisions, including the decision as to whether a party has opened the door to otherwise inadmissible evidence, for an abuse of discretion. *United States v. Blake*, 571 F.3d 331, 348 (4th Cir. 2009); *Corbett v. Fleetwood Homes of N. Carolina*, 213 F.3d 630 (4th Cir. 2000). As discussed above, abuse of discretion is present if the District Court made an erroneous application of law or an erroneous finding of fact. *Odetics, Inc. v. Storage Tech. Corp*, 185 F.3d 1259, 1276 (Fed. Cir. 1999);*Brown v. Nucor Corp.,* 576 F.3d 149, 161 (4th Cir. 2009).

When a party presents evidence on a particular material issue, that party has opened the door and the opposing party is thereafter to respond in kind with inadmissible evidence. Once the door to a particular issue has been opened, the trial court may admit otherwise inadmissible evidence in the interest of fairness and to ensure that a true and complete version of disputed events is presented to the trier of fact. *United States v. Blake*, 571 F.3d 331, 348 (4th Cir. 2009); *Corbett*, 213 F.3d at 630 (4th Cir. 2000) *citing Hinkle v. Hampton*, 388 F.3d. 141, 145 (10th Cir. 1968). Otherwise, a one-sided presentation may leave a false impression with the jury regarding a material issue. Inadmissible evidence is often admitted for the purpose of rebuttal where the opposing party has opened the door to such evidence. *United States v. Higgs*, 353 F.3d 281, 329-330 (4th Cir. 2003).

50

On September 3, 2013, counsel for Defendant questioned Plaintiffs regarding the undercover investigation and multiple purchases made by Mr. Wofford from Defendant. Specifically, counsel for Defendant questioned Plaintiffs on whether it had any indication of whether the variety purchased was the protected variety *TifBlair*.[*See* Transcript of Trial Testimony, September 3, 2013, p. 1169 line 25 through p. 1173, line 12]. In pertinent part, that questioning including the following:

```
17 Q  And you didn't test to see if the seeds were large, did
18     you?
19 A  No.
20 Q  You didn't test to see if this elusive stolon was
21     longer, did you?
22 A  No.
23 Q  You didn't see how many leaves were on the stolon, did
24     you?
25 A  Not to my knowledge.
 1 Q  And you and the University of Georgia never did anything
 2     to determine whether or not that grass that was purchased in
 3     South Carolina was TifBlair, did you?
 4 A  No.
 5 Q  The man himself, Dr. Wayne Hanna, didn't even test the
 6     grass, did he?
 7 A  No.
 8 Q  So the grass was purchased, right?
 9 A  Yes.
10 Q  And nothing you did with the grass proved that it was
11     TifBlair, did it?
12 A  No
```

[*Id* at. p. 1172 line 17 through p. 1173, line 12].Following Defendant's questioning, Plaintiffs requested that the District Court allow the introduction of

such admissions contained in the recordings. [*Id*. at p. 1174 line 14 through p. 1175 line 1]. The District Court denied Plaintiffs' request. [*Id*. atp. 1184 lines 4-8]. Also, Defendant questioned Zelotis Wofford regarding the three (3) pallets purchased in September, 2007 which died before delivery to Arkansas as to an absence of proof that the same was *TifBlair*.[TT pp 339, 357].One of these pallets was purchased at a non-recorded event and testimony regarding that one purchase was allowed on direct. The other two (2) pallets were purchased on recorded events and no evidence of such was allowed on direct. [TT, p. 1182]. The tape recording would establish it was the same grass as *TifBlair* but only had a different name for all purchases. [*Supra* Statement of Facts].

The denial of Plaintiffs' request resulted in the specific harm sought to be prevented by the doctrine of 'opening the door.' The jury was left with a false and incomplete impression of Plaintiffs' knowledge of the variety sold. Through the above-quoted questioning, Defendant sought to establish that Plaintiffs had no evidence that the variety purchased by Mr. Wofford was *TifBlair*. However, in doing so, Defendant opened the door to the tape recordings which contain Defendant's admissions, made at the time of sale, that the variety sold was *TifBlair*. Further, Defendant's questioning attempts to imply that Plaintiffs were careless in determining whether the purchased variety was *TifBlair*. However, the tape recordings, containing Defendant's admission as to the variety sold, provide a

rebuttal explanation as to why no further testing was necessary.  Furthermore, such ruling was cumulative error of the prior exclusion.

The District Court did not seek to issue a limiting instruction that the jury only consider the recordings insofar as they rebut the Defendant's contention that the variety sold was not *TifBlair,* as allowed by the Court in *Higgs*, 353 F.3d at 330 (4[th]Cir. 2003).  Rather, the recordings were prohibited in their entirety.

In light of the significance of the recordings as clear rebuttal evidence that the variety sold was *TifBlair,* and in light of the false and incomplete presentation allowed to the jury, the District Court erred in denying Plaintiffs' request to introduce the recordings.

## D.      The Denial of Plaintiffs' Objections to Certain Jury Charges.

On appeal, the jury instructions given at trial are examined for correctness and adequacy and they are examined as a whole. *Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1353 (Fed. Cir. 1991) ("In reviewing the jury charge for correctness and adequacy, the jury instructions are viewed as a whole."). The judgment under review should not be disturbed unless a prejudicial legal error is shown. *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557 (Fed. Cir. 1993) ("We review the adequacy of the jury instructions for prejudicial legal error.").In order to show prejudicial error, the party claiming error must show two things: (1) that the instruction was erroneous and (2) that the error had prejudicial effect. *Ecolab, Inc.*

*v. Paraclipse, Inc.,* 285 F.3d 1362, 1373 (Fed. Cir. 2002). In other words, the party claiming error must demonstrate that the error affected the outcome of the case. *Environ Products, Inc. v. Furon Co.,* 215 F.3d 1261, 1266-67 (Fed. Cir. 2000).

### i.    Refusal to Instruct the Jury regarding Merger Clause was Erroneous

The District erred when it refused to instruct the jury on Merger Clauses. *Jury Instructions* [Doc 219]. Plaintiffs were entitled to have the jury charged that, although they may have heard parole evidence during the trial, they are not to consider any parole evidence when deciding Plaintiffs' breach of contract claim since there was no ambiguity in the sub-license agreement. Under Georgia law, which governs the sub-license between TTG and Defendant, it is not permissible to have parole evidence to alter the terms of a contract when if it is clearly written and unambiguous. *See e.g. Cook v. Reg'l Commc'ns, Inc.,* 244 Ga. App. 869, 870 (2000) ("It is well established that such a merger clause precludes the admission of parole evidence to add to, take from, or vary the written contract."); *O.C.G.A. § 13-2-2(1)* (West 2013).

Plaintiffs objected to its exclusion at trial and gave their reasons for why the Merger Clause Instruction was necessary to effectuate a fair and accurate jury instruction. [TT, pp. 1250-52, 1291-93, 1297]. Moreover, Plaintiffs' Merger Clause instruction would have clearly explained this principle to the jury and was tailored to the facts of the case. In addition, the instruction would have had a

54

determinative effect in the case if it had been read to the jury, because it would have prevented any consideration of the parole evidence improperly elicited at trial. *Plaintiffs' Proposed Jury Instruction* [Doc 215p. 3].

**E.  The Denial of Plaintiffs' Request to Proffer the Undercover Recordings to the Extent the Appellate Court could Conclude the Issue was not Preserved for Appellate Review because the Evidence was not Proffered at Trial.**

On August 9, 2013, the District Court erred in issuing its Order which denied Plaintiffs' request to proffer the undercover recordings to the extent that this Court could conclude the issue was not preserved for Appellate review. As required by F.R.A.P. 28(a)(8)(B) and Local Rule 28, Appellant hereby states as follows:  The Fourth Circuit reviews failure to accept offers of proof for an abuse of discretion.  *Bateman v. Huffman*, 905 F.2d 1528 (4[th]Cir. 1990).  As discussed above, abuse of discretion is present if the District Court made an erroneous application of law or an erroneous finding of fact. *Odetics, Inc. v. Storage Tech. Corp*, 185 F.3d 1259, 1276 (Fed. Cir. 1999);*Brown v. Nucor Corp.,* 576 F.3d 149, 161 (4[th]Cir. 2009).

The District Court granted Defendant's Motion in Limine to exclude certain evidence regarding the tape recordings [Doc 198].  Plaintiffs' objection to that Motion in Limine detailed the substance of the recordings, the purpose of the recordings, and an explanation of how such evidence was admissible. [Doc 183]. The District Court's ruling was definitive as it did not leave any issue for later

determination and was not revisited at the trial of this matter. *Supra* Section Six (6)

above.  Therefore, such ruling relieved Plaintiffs from making an offer of proof at

the trial of this matter under F.R.E. 103(b), which provides as follows:

> (b)     Not Needing to Renew an Objection or Offer of Proof**.** Once
> the court rules definitively on the record--either before or at
> trial--a party need not renew an objection or offer of proof to
> preserve a claim of error for appeal.

However, out of an abundance of caution, Plaintiffs requested that the District

Court allow Plaintiffs to make an offer of proof of the recordings at the trial of this

matter, which was denied by the District Court.  To the extent that such an offer of

proof was required, the District Court erred in interpreting the applicable law as

not requiring such an offer of proof and thereby denying Plaintiffs' right to make

such an offer.  *See also Beauharnais v. People of State of Ill.*, 343 U.S. 250, 300

(dissenting opinion noting regarding a trial court improperly refusing an offer of

proof).

## <u>CONCLUSION</u>

The District Court erred in excluding the undercover tapes which clearly

establish violations of the PVPA and contract rights of the Plaintiffs.  Accordingly,

the Judgment of the District Court should be reversed and the Plaintiffs should be

allowed a new trial of the action with the tape recordings and testimony related

thereto admitted as evidence.  Furthermore, the District Court committed error in

not directing judgment as a matter of law in favor of the Plaintiffs on liability as to

the Lanham Act and PVPA claims and it should be reversed accordingly with direction to the District Court to enter judgment as to liability in favor of the Plaintiffs. Additionally, the District Court erred in excluding the testimony of the Plaintiffs' expert and upon the reversal and re-trial of this action, said expert's testimony should be allowed and admitted into evidence.

# UNITED STATES DISTRICT COURT
for the

District of South Carolina

| | |
|---|---|
| THE TURFGRASS GROUP, INC AND UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC. | |
| Plaintiff | |
| v. | Civil Action No.    5:10-849-JMC |
| CAROLINA FRESH FARMS, INC AND CAROLINA FRESH FARMS, LLC AND JOHN FOGLE, SR. | |
| Defendants  and Third- Party Plaintiffs | |
| v | |
| ZELOTIS WOFFORD AND BILLY SELF | |
| Third-Party Defendants. | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____

recover costs from the plaintiff *(name)* _____.

■ other: By order entered March 18, 2013, Honorable J. Michelle Childs, granted summary judgment in favor of defendant John Fogle, Sr and found that the defendants were entitled to summary judgment on plaintiffs' claims for actual damages on their causes of action under the Plant Variety Protection Act and the Lanham Act.

It is ordered that Summary Judgment is hereby entered for defendant John Fogle, Sr.  It is further ordered that Summary Judgment is entered for defendants as to Plaintiff's claims  for actual damages on their causes of action under the Plant Variety Protection Act and the Lanham Acts.
By order entered August 6, 2013, Honorable J. Michelle Childs, dismissed the Defendants and Third Party Plaintiffs Counterclaim and Third party complaint.

This action was *(check one)*:

■ tried by a jury, the Honorable _____J. Michelle Childs_____ presiding, and the jury has rendered a verdict.

 It is ordered that the plaintiffs, recover nothing, the action be dismissed on the merits, and that the defendants,

Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC, recover costs from the plaintiffs, The Turfgrass

Group, Inc. and University of Georgia Research Foundation, Inc..

 Date:   September 5, 2013                                  *CLERK OF COURT*

                                                             s/Jane Adams, Deputy Clerk
                                                             _____
                                                             *Signature of Clerk or Deputy Clerk*

000059

| 04/01/2011 | 86 | NOTICE of Hearing on Motion 54 MOTION for Sanctions : Motion Hearing set for 4/28/2011 02:00 PM in Columbia # 5, Matthew J. Perry, Court House, 901 Richland St, Columbia before Honorable Margaret B Seymour. (asni, ) (Entered: 04/01/2011) |
|---|---|---|
| 04/01/2011 | 87 | NOTICE OF RESCHEDULED HEARING Motion Hearing set for 4/28/2011 02:00 PM in Columbia # 5, Matthew J. Perry, Court House, 901 Richland St, Columbia before Honorable Margaret B Seymour. cancelled and rescheduled to: Motion Hearing set for 5/3/2011 02:00 PM in Columbia # 5, Matthew J. Perry, Court House, 901 Richland St, Columbia before Honorable Margaret B Seymour. (asni, ) (Entered: 04/01/2011) |
| 04/15/2011 | 88 | Second MOTION to Compel by Carolina Fresh Farms Inc, Carolina Fresh Farms LLC, John A Fogle, Sr. Response to Motion due by 5/2/2011 (Attachments: # 1 Exhibit 1- Defendants' First Requests for Producton to UGRF, # 2 Exhibit 2- Defendants' First Interrogatories to UGRF, # 3 Exhibit 3- Defendants' First Requests for Production to Turfgrass, # 4 Exhibit 4- Defendants' First Interrogatories to Turfgrass, # 5 Exhibit 5- Defendants' Second Requests for Production to Turfgrass, # 6 Exhibit 6- Letter dated October 25, 2010, # 7 Exhibit 7- Letter dated November 12, 2010, # 8 Exhibit 8- Letter dated February 4, 2011, # 9 Exhibit 9- Emails dated October 25, 2010, # 10 Exhibit 10- Email dated November 12, 2010, # 11 Exhibit 11- Emails dated February 25, 2011, # 12 Exhibit 12- Emails dated March 7, 2011, # 13 Exhibit 13- Emails dated April 5, 2011, # 14 Exhibit 14- Email dated April 13, 2011)No proposed order(Boesl, Christian) (Entered: 04/15/2011) |
| 05/02/2011 | 89 | Consent MOTION for Extension of Time to File Response/Reply as to 88 Second MOTION to Compel by The Turfgrass Group Inc, University of Georgia Research Foundation Inc. Response to Motion due by 5/19/2011 (Attachments: # 1 Exhibit Statement of Counsel)Proposed order is being emailed to chambers with copy to opposing counsel(Wlodarczyk, Damon) (Entered: 05/02/2011) |
| 05/03/2011 | 90 | **TEXT ORDER granting 89 Motion for Extension of Time to File Response/Reply re 88 Second MOTION to Compel Response to Motion due by 5/17/2011 Signed by Honorable Margaret B Seymour on 5/3/2011.(asni, )** (Entered: 05/03/2011) |
| 05/03/2011 | 91 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: granting in part and denying in part 54 Motion for Sanctions; Motion Hearing held on 5/3/2011 re 54 Monthly MOTION for Sanctions filed by John A Fogle, Sr, Carolina Fresh Farms LLC, Carolina Fresh Farms Inc. Plaintiffs may not use recordings, and are directed to turn over all recordings to defense counsel within 10 days. Failure to turn over all tapes within 10 days will result in monetary penalties. Court Reporter Jenny Williams. (mdea )** (Entered: 05/03/2011) |

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ORANGEBURG DIVISION

| | | |
|---|---|---|
| The Turfgrass Group, Inc. and University of Georgia Research Foundation, Inc., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5:10-cv-00849-JMC |
| v. | ) ) | **OPINION AND ORDER** |
| Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr., | ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| Zelotis Wofford and Billy Self, | ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court on Plaintiffs The Turfgrass Group, Inc. ("Turfgrass") and University of Georgia Research Foundation, Inc.'s ("UGARF," and collectively "Plaintiffs") Motion for Partial Summary Judgment as to Liability Against Defendant Carolina Fresh Farm [Dkt. No. 148]. For the following reasons, the court denies Plaintiffs' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Plaintiffs' claims against Defendants Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc.( "Carolina Fresh") and John A. Fogle, Sr. for violation of the Plant Variety Protection Act (the "PVPA"), 7 U.S.C. § 2541, *et seq.*; the Lanham Act, 15 U.S.C. §1125; and for state law breach of contract arising from Turfgrass and Carolina Fresh's agreement for the sale of a certified variety of centipede grass called TifBlair. TifBlair is

1

000061

certified under the PVPA as a distinct variety of centipede grass by the United States Department of Agriculture, Agricultural Research Service (the "USDA"). The USDA issued Plaintiff UGARF a license for TifBlair, which it sublicensed to Turfgrass. Pursuant to the sublicense between UGARF and Turfgrass, Turfgrass is allowed to enter into third-party agreements for the marketing, sale, and use of TifBlair.

In the late 1990s, Turfgrass entered into an agreement with Carolina Fresh that allowed Carolina Fresh to grow, market, and sale TifBlair grass under certain conditions. Those conditions included, *inter alia*, the maintenance of certain certification standards and the payment of royalties. The agreement remained in place until it was terminated by Turfgrass in November 2006.

Plaintiffs contend that, after Turfgrass terminated the agreement, Carolina Fresh sold TifBlair grass in violation of the PVPA, the Lanham Act, and in breach of the provisions governing the termination of the parties' agreement. Currently before the court is Plaintiffs' motion for partial summary judgment[1] as to Carolina Fresh's liability on these causes of action.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[1]Defendants have also filed a Motion for Summary Judgment and a motion seeking to exclude Plaintiffs' expert witness, Donald Davis. This order only disposes of the issues raised in Plaintiffs' motion. The court will address Defendants' motions by separate order.

000062

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

**PLANT VARIETY PROTECTION ACT**

The PVPA provides patent like protections to developers of certain new and distinct asexually reproduced plant varieties. *See* 35 U.S.C.A. § 161 *et seq.* The owner of a PVPA may prevail on a cause of action for infringement by demonstrating that the alleged infringer (1) sold or marketed the protected variety; (2) imported or exported it; (3) multiplied or propagated it "for growing purposes"; (4) used it to produce "a hybrid or different variety"; (5) used its specifically marked seed "or progeny thereof to propagate the variety"; (6) dispensed it "to another, in a form which can be propagated, without notice as to being a protected variety under which it was

3

received"; (7) conditioned it "for the purpose of propagation," except as to certain activities permitted under the Act; or (8) stocked it for an impermissible purpose under the Act. 7 U.S.C. § 2541(a).

Viewing the facts in the light most favorable to the non-moving party, Carolina Fresh, the court finds that Plaintiffs have failed to demonstrate that there are no genuine issues of material fact as to their PVPA claim, and Plaintiffs are not entitled to judgment as a matter of law. Among other issues, the court notes that there is a genuine issue of material fact as to whether the remaining inventory sold by Carolina Fresh after the termination of the agreement was the "protected variety" given that the agreement was terminated, at least in part, for Carolina Fresh's alleged failure to maintain certified TifBlair fields. Additionally, even assuming the remaining inventory qualified as the "protected variety," there is a genuine dispute of material fact as to whether and how Carolina Fresh was authorized to dispose of it under the agreement post-termination. Therefore, the court may not grant summary judgment in favor of Plaintiffs on their PVPA claim.

**LANHAM ACT**

In this case, Plaintiffs' Lanham Act claim rests on the false advertising provisions of the Lanham Act. *See* Plaintiffs' Memorandum Brief in Support of Motion for Partial Summary Judgment, at 15 [Dkt. No. 148-3].

> [A] plaintiff asserting a false advertising claim under the Lanham Act must establish that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation,

000064

either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (internal citations and quotation marks omitted).  "For liability to arise under the false advertising provisions of the Lanham Act, 'the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.'" *Id.*

The court finds that Plaintiffs have failed to demonstrate that there are no genuine issues of material fact as to their Lanham Act claim, and Plaintiffs are not entitled to judgment as a matter of law.  Plaintiffs' claims are centered on Carolina Fresh's continued use of marketing materials describing TifBlair grass after termination of the agreement to promote Carolina Fresh's Carolina Green grass simply by changing the name of the grass in the marketing materials.  Plaintiffs contend that the descriptions used in the marketing materials for TifBlair through 2006 are particular to the properties of TifBlair grass and, by using the exact language and marketing materials for Carolina Green, Carolina Fresh violated the Lanham Act causing confusion in the marketplace regarding the attributes and quality of TifBlair versus Carolina Green grasses.   Through the Rule 30(b)(6) deposition testimony of Carolina Fresh's representative, Plaintiffs presented an admission that Carolina Fresh did not develop any new variety of centipede grass and that Carolina Green was merely Carolina Fresh's branding name for common centipede.  While this testimony arguably eliminates any factual dispute as to the falsity of the statement in Carolina Fresh's brochures that "In 2007 Carolina Fresh is proud to introduce Carolina Green centipede, **a new variety developed** for improved . . ." [Dkt 148-5, at 19] (emphasis added), many of the other elements required to establish a Lanham Act violation

5

remain disputed when viewed in the light most favorable to Carolina Fresh.  For example, there are genuine disputes of fact regarding the materiality of the representations, whether the representations were actually deceptive or tended to be deceptive, and whether Plaintiffs' injuries resulted from the representations.  Particularly, the record reflects a genuine dispute concerning whether the language used in the marketing materials were unique to the properties of TifBlair such that the use of those terms would create confusion in the marketplace as compared to common centipede.  Accordingly, Plaintiffs are not entitled to partial summary judgment on this claim.

**BREACH OF CONTRACT**

To recover for a breach of contract a plaintiff must demonstrate: (1) the existence of a binding contract entered into by the parties; 2) breach of the contract; and 3) damages directly and proximately caused by the breach. *Fuller v. Eastern Fire & Casualty Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).

The court cannot grant Plaintiffs' request for partial summary judgment on their breach of contract claim because there is a genuine dispute of material fact as to whether Carolina Fresh breached the sub-license agreement at issue.  Plaintiffs contend that Carolina Fresh violated ¶ 12.3 of the agreement, which provides:

> In the event this Agreement is terminated, Sublicensee shall destroy all production fields of Sublicensed Product and notify Sublicensor of such action. Sublicensee may continue to Sell in the ordinary course of business for a period of one (1) year after the termination date Sublicensed Product provided that royalties on such Sales and all other sums due hereunder are timely paid in the amounts and manner provided in this Agreement. Following such one (1) year period, all remaining production and Inventory of Sublicensed Product must be destroyed and verified by Sublicensor. In the event this Agreement is terminated for reason 12(1)(c), Sublicensee may sell existing inventory only into the generic trade as variety not stated and all Sublicensed Product material must be destroyed and verified by Sublicensor within one (1) year of termination. Notwithstanding

6

000066

anything herein to the contrary, upon termination of this Agreement for any reason, Sublicensee must pay all sums due to Sublicensor hereunder upon demand.

Plaintiffs assert that Carolina Fresh violated the agreement by failing to pay required royalties on sales of TifBlair made after the expiration of the agreement. Carolina Fresh admits that it did not pay royalties but asserts that it was not required to pay royalties because Plaintiffs terminated the sublicense agreement pursuant to provision 12(1)(c), which allows termination of the agreement for failure to meet certain certification requirements. Carolina Fresh contends that because it was not selling the grass as TifBlair, and therefore not as a "Sublicensed Product" as defined in the contract, it was not required to pay royalties. On this claim, the court notes that there is a genuine dispute of fact concerning whether Carolina Fresh complied with the terms of the agreement post-termination in the manner in which but harvested and sold the remaining inventory. Furthermore, there is a material dispute regarding the sales records as related to the remaining inventory and whether Plaintiffs may recover for sales recorded as "TifBlair" only, or also for sales recorded as "centipede" and "Carolina Green" based on Carolina Fresh's record keeping practices. Additionally, the court finds that there is an ambiguity in the language of the agreement as to the requirement for the payment of royalties. Therefore, summary judgment in favor of Plaintiffs is not appropriate on the breach of contract claim. *See Duncan v. Little*, 384 S.C. 420, 245, 682 S.E.2d 788, 790 (2009) ("where a contract is ambiguous, the fact finder must ascertain the parties' intentions from the evidence presented.").

000067

## CONCLUSION

For the foregoing reasons,[2] the court **DENIES** Plaintiffs The Turfgrass Group, Inc. and University of Georgia Research Foundation, Inc.'s Motion for Partial Summary Judgment as to Liability Against Defendant Carolina Fresh Farm [Dkt. No. 148].

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

March 11, 2013
Orangeburg, South Carolina

---

[2]This order does not reflect all genuine issues of material fact which may support its ruling.

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ORANGEBURG DIVISION

| | | |
|---|---|---|
| The Turfgrass Group, Inc. and University of Georgia Research Foundation, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5:10-cv-00849-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr., | ) | |
| | ) | |
| Defendants/ Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Zelotis Wofford and Billy Self, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

This matter is before the court on Defendants Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr.'s (collectively "Carolina Farms") Motion to Exclude Plaintiffs' Damages Expert, Donald Davis [Dkt. No. 146]. For the following reasons, the court grants Carolina Farms's Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Plaintiffs The Turfgrass Group, Inc. ("Turfgrass") and University of Georgia Research Foundation, Inc.'s (collectively, "Plaintiffs") claims against Carolina Fresh for violation of the Plant Variety Protection Act (the "PVPA"), 7 U.S.C. § 2541, et seq.; the Lanham Act, 15 U.S.C. §1125; and for state law breach of contract arising from Turfgrass and Carolina Fresh's agreement for the sale of a certified variety of centipede grass called TifBlair.

1

The motion currently before the court concerns Carolina Fresh's claims that Defendants' expert witness, Donald Davis, is not qualified to provide expert testimony in this case because he lacks the requisite qualifications and, further, that Davis's opinions are unreliable because he utilizes untested, novel theories in his damage analysis and relies upon hypothetical data so dissimilar from the factual circumstances of this case such that his opinions are merely subjective, speculative and conjectural.    Carolina Fresh seeks the exclusion of Davis's testimony and opinions from consideration in this case.

## DISCUSSION

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.   In determining the admissibility of expert witness testimony, the court must evaluate whether the testimony is reliable and relevant.   In making this assessment, the court may consider the following factors, among other things: (1) whether a theory or technique can and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) a consideration of the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether there is "general acceptance" of the theory or technique within the relevant scientific community. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993).

2

The focus of the court's Rule 702 analysis is on the manner in which the expert reached the conclusions and not on the actual conclusions reached. *Id.* at 595.

Carolina Fresh first attacks Davis's qualifications to serve as an expert witness. Essentially, Carolina Fresh asserts that Davis is incompetent as an expert witness in this case because he has little or no experience in agriculture, agribusiness, agricultural economics, or the turfgrass industry. Additionally, Carolina Fresh complains that Davis is only educated as a certified public accountant, has written no articles on the subject of his opinion, and has only recently begun rendering opinions in infringement cases handled by Plaintiffs' counsel.

The United States Court of Appeals for the Fourth Circuit has recently provided additional insight into the appropriate evaluation of an expert witness's qualifications. In *Belk, Inc. v. Meyer Corp.,* 679 F.3d 146, 162 (4th Cir. 2011), the Fourth Circuit held that an expert was properly qualified to render an opinion in a trade dress/trademark litigation matter despite the fact that the expert had not previously handled trade dress or trademark infringement matters. In it's analysis, the court noted "[i]n undertaking its role as gatekeeper. . . the district court must decide whether the expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. . . [and should] consider the proposed expert's full range of experience and training, not just his professional qualifications." *Id.* (internal citations and quotation marks omitted). Using this criteria, the Fourth Circuit found the expert's education, teaching, research and consulting activities, properly qualified him as an expert in marketing, consumer behavior, and evaluative studies. *Id.* The court further commented that the expert had some understanding of the specific issues raised in the case, and that any attack on the sufficiency of that knowledge was more appropriately left to cross-examination. *Id.* at 162-63.

3

Davis's expert report and curriculum vitae reflects that he is a certified public accountant with over twenty years of experience.  He has participated in many litigation matters, providing research, financial analysis, and expert opinions concerning damages in various subjects including the PVPA.  Although he only notes one instance in which he has provided expert testimony in a PVPA matter concerning wheat seed, it appears that he has also provided testimony on damages issues in bankruptcy proceedings and litigation over non-competition agreements.  In preparation for rendering his opinion in this case, Davis's report reflects that he reviewed relevant federal statutes, articles discussing the calculation of intellectual property infringement damages, a study on projected costs and returns from centipede sod production, and case law.  Based on the *Daubert* standard as interpreted in *Belk* and upon review of the record, the court finds Davis to be qualified to render an expert opinion on damages in this case.

Carolina Fresh further attacks the reliability of Davis's opinions.  Significantly, Carolina Fresh contends that Davis's method for formulating his opinion has no accepted scientific or factual basis and is directly contrary to established law.  An expert opinion is reliable only when it is based on scientific, technical, or other specialized knowledge derived using scientific or other valid and accepted methods.  *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir.1999).  The opinion will not be considered reliable where it is premised on mere conjecture, belief or speculation, and unsupported inferences. *Id.*  Generally, "[w]hile there will be occasions when the proffered [opinion] is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011) (internal quotation marks omitted). "[T]he court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will

4

depend upon the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999). "[I]f an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) (citing *Westberry*, 178 F.3d at 265-66)) .

Here, Davis renders his opinion that Plaintiffs are entitled to damages measured as a royalty rate equal to fifty-three percent (53%) of the retail selling price of the TifBlair grass for a total monetary damages amount of $2,486,125.35.00. In determining this damage amount, Davis noted that the prior agreement between the parties established a royalty rate for TifBlair at seven percent (7%). However, Davis opined that this established rate would not be applicable in this case because the parties were no longer operating pursuant to a negotiated agreement, and instead, opined that Carolina Fresh's alleged infringement resulted in a "compulsory" or "forced" licensing arrangement which justified a royalty adjustment. In his deposition, Davis testified that his opinion on the royalty adjustment was based on the factors established in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 243 F. Supp. 500 (S.D.N.Y 1965). However, Davis also testified that he added an additional factor in his royalty rate determination - the consideration of a rate to account for the disgorgement of the infringer's profits. Davis acknowledged that the addition of this factor had no basis in established authority or methodology and was merely his subjective opinion. Additionally, Davis's opinion is predominantly based on a study of a fictional centipede sod farm conducted by Louisiana State University which does not include any adjustments for relevant economic circumstances. In his deposition, Davis acknowledged that he had not reviewed any data concerning Carolina Fresh's operations and had not accounted for any economic circumstances relevant to centipede sod

5

production and sales during the years in which he calculated his projections.  Based on this record, the court finds this one of the rare circumstances in which the proffered opinion is so flawed as to provide little help to the trier of fact.  The record reflects that Davis's opinion is not based on accepted methodology, has not been subjected to peer review or publication, and has not been generally accepted within the relevant scientific community.  Furthermore, Davis's opinion has little or no basis in the actual facts of this case.  Accordingly, the court finds his opinion unreliable and, therefore excluded.

## CONCLUSION

For the reasons set forth above, Defendants Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr.'s Motion to Exclude Plaintiffs' Damages Expert, Donald Davis [Dkt. No. 146] is **GRANTED**.  Although the court finds Donald Davis qualified to render an expert opinion, the court determines that his opinion as to damages in this case is unreliable.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 14, 2013
Orangeburg, South Carolina

6

000074

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ORANGEBURG DIVISION

| | | |
|---|---|---|
| The Turfgrass Group, Inc. and University of Georgia Research Foundation, Inc., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5:10-cv-00849-JMC |
| v. | ) ) | **OPINION AND ORDER** |
| Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr., | ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| Zelotis Wofford and Billy Self, | ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court on Defendant Carolina Fresh Farms, LLC's ("Carolina Farms") Motion In Limine [Dkt. No. 181] seeking the exclusion of evidence related to several of Plaintiffs' claims.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Plaintiffs' The Turfgrass Group, Inc. ("Turfgrass") and University of Georgia Research Foundation, Inc.'s (collectively, "Plaintiffs") claims against Carolina Farms for violation of the Plant Variety Protection Act (the "PVPA"), 7 U.S.C. § 2541, *et seq*.; the Lanham Act, 15 U.S.C. §1125; and for state law breach of contract arising from Turfgrass and Carolina Farms' agreement for the sale of a certified variety of centipede grass called TifBlair.

000075

In its Order [Dkt. No. 173], this court granted Carolina Farms' Motion to Exclude Plaintiff's Damages Expert Donald Davis ("Davis") [Dkt. No. 146] on the basis that his opinion regarding actual damages in this case was unreliable. Accordingly, in a subsequent Order [Dkt. No. 174] on Carolina Farms' Motion for Summary Judgment [Dkt. No. 148], the court granted Carolina Farms' motion as to Plaintiffs' claims for actual damages on their causes of action under the PVPA and the Lanham Act. *See Pharmanetics, Inc., v. Aventis Pharmaceuticals, Inc.*, 182 F. App'x 267, 274 (4th Cir. 2006) (finding summary judgment appropriate on claim for "lost sales damages" under the Lanham Act where the only evidence of damages was contained in an expert report that was excluded by the court on the grounds that it was not grounded in the facts of the case and too speculative.) However, the court denied summary judgment as to liability on all claims. Additionally, the court noted that summary judgment was not appropriate on Plaintiffs' request for equitable relief and Plaintiffs' request for damages for their breach of contract claim given their potential ability to recover at least nominal damages to cover the costs of bringing the action. Neither Plaintiffs nor Carolina Farms have asked the court to reconsider its ruling in favor of granting summary judgment to Carolina Farms on the issue of actual damages under the PVPA or the Lanham Act.

Carolina Farms filed a Motion in Limine [Dkt. No. 181] requesting that the court preclude Plaintiffs from "offering, referring, or alluding to, in the jury's presence, opening statements, or at any time during trial, or during closing arguments, either directly or indirectly, 1) evidence related to alleged infringement or recovery under the PVPA; 2) evidence related to alleged infringement or recovery under the Lanham Act; 3) evidence of Plaintiffs' surreptitious investigation, the recordings and any evidence gleaned therefrom except for the grass Plaintiffs purchased from Carolina Farms; and 4) evidence related to actual damages under Plaintiffs'

000076

breach of contract claim.  Plaintiffs filed a Response [Dkt. No. 183] to Carolina Farms' Motion

in Limine and Defendants filed a Reply in Support of Motion In Limine [Dkt. No. 184].

## DISCUSSION

### I.   Evidence Related to Plaintiffs' PVPA Infringement Claim

Carolina Farms argues that, because this court granted its summary judgment motion as

to Plaintiffs' claims for actual damages under the PVPA, there is nothing left for a jury to

adjudicate on this claim.    Plaintiff asserts that the order specifically denied Carolina Farms'

motion for summary judgment as to the liability on all claims thereby expressly preserving the

issue of liability on Plaintiffs' PVPA claims for trial.  Plaintiff asserts that it may introduce

evidence of infringement as well as evidence of a reasonable royalty rate and attorney's fees.

The PVPA provides in relevant part: "[u]pon finding an infringement, the court shall

award damages adequate to compensate for the infringement but in no event less than a

reasonable royalty for the use made of the variety by the infringer, together with interest and

costs as fixed by the court." 7 U.S.C. § 2564.  Additionally, the statute provides that the court or

a jury may determine damages and that the court "may receive expert testimony to aid in the

determination of damages of what a reasonable royalty would be."  7 U.S.C. § 2564.

While the court's prior ruling granted summary judgment as to Plaintiffs' claims for

actual damages based on the royalty rate adjustments calculated by Davis, the statute requires,

upon a finding of infringement, that the court award at least a reasonable royalty for the use of

the variety by the infringer with interest and costs as fixed by the court.  Consistent with this

court's prior order excluding the opinion of Plaintiffs' expert, a jury may consider the royalty

rate of seven percent (7%) as provided for in the Sublicense Agreement.

000077

Therefore, Defendants' Motion in Limine seeking exclusion of evidence related to Plaintiffs' infringement and recovery under the PVPA is denied. Plaintiffs will be able to introduce evidence related to a reasonable royalty based on the Sublicense Agreement. Plaintiffs will not be permitted to put forward evidence previously excluded with regard to Davis's royalty adjustment calculations, as that evidence was deemed unreliable.

## II. Evidence Related to Lanham Act Violations

Carolina Farms argues that the court has previously granted summary judgment in its favor for actual damages under the Lanham Act and that Plaintiffs have presented no evidence that the alleged trademark infringement is still occurring such that a jury should hear evidence related to Plaintiffs' request for an injunction. Plaintiffs assert that the court ruled as to actual damages alone, but not liability or equitable relief. Therefore, Plaintiffs argue that they should not be precluded from presenting evidence related to (1) Carolina Farms' liability under the Lanham Act; (2) Plaintiffs' entitlement to an award based on Defendants' profits and Plaintiffs' costs for bringing the action; and (3) Plaintiffs' entitlement to injunctive relief.

The Lanham Act provides that, upon establishing a trademark or false advertising violation, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover . . . (1) defendant's profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). As the statute makes clear, awards under this section are equitable in nature. *Id*. Further, actual damages need not be present for a party to receive an award of defendants' profits; instead an award based on a defendant's profits may be predicated on a theory of unjust enrichment or deterrence. *See Western Diversified Services, Inc., v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005); *Marshak v. Treadwell*, 595 F.3d 478, 495, (3d Cir. 2009).

000078

Furthermore, the Lanham Act allows the court to award attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). "An exceptional case is one where the infringement is deliberate, willful, fraudulent, or malicious." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 885 F. Supp. 141, 144 (M.D.N.C. 1994), *aff'd*, 87 F.3d 654 (4th Cir. 1996) (internal citations omitted).

Plaintiffs' complaint clearly seeks an award based on Carolina Farms' profits as well as costs and attorney's fees. In its Order [Dkt. No. 174] on Carolina Farms' Motion for Summary Judgment, the court found that because there were genuine issues of material fact as to Carolina Farms' liability, granting summary judgment in favor of Carolina Farms as to Plaintiffs' equitable relief was not appropriate. Therefore, Plaintiffs may introduce evidence in support of their claims for equitable relief to include Carolina Farms' profits, Plaintiffs' requested permanent injunction,[1] and Plaintiffs' request for costs and attorney's fees.

### III. Evidence of Plaintiff's Surreptitious Investigation, the Recordings, and Any Evidence Gleaned Therefrom

Carolina Farms seeks to prevent Plaintiffs from introducing "evidence of an undercover investigation or the fruits of that investigation other than evidence that Plaintiffs purchased grass from Carolina Farms." Carolina Farms bases their request on a decision by a United States District Judge previously assigned to this case, in which the judge found that Plaintiffs' counsel's use of investigators to secretly record Carolina Farms' employees violated Rule 8.4(d) of the

---

[1] Carolina Farms argues that it is inappropriate to grant an injunction based on conduct that allegedly occurred in 2007 and 2008 and is, in any event, not occurring now. Carolina Farms further argues that Plaintiffs will not suffer irreparable harm if an injunction is not issued. The fact that the alleged infringement is not occurring now does not necessarily mean that it will not occur in the future. Additionally, consistent with the court's prior ruling on Defendants' Motion for Summary Judgment [Dkt. No. 174], the court will allow Plaintiffs to present evidence that they will suffer irreparable harm if an injunction is not issued.

000079

South Carolina Rules of Professional Conduct.[2]   Instead of dismissing the case entirely or awarding financial sanctions, the judge stated "Plaintiffs' counsel shall not be permitted to utilize the tape recordings as evidence in this action."   Hearing Transcript [Dkt. No. 92, at 32].   The judge further ordered that "Plaintiffs be prohibited from offering testimony about the conversations that were contained in the tape recordings" but specifically stated that "other evidence obtained as a result of Plaintiffs' investigations, including, for example, samples of grass that Carolina Farms' employees sold investigators or things of that nature, would be relevant." *Id*.

Given this ruling, Carolina Farms' Motion in Limine is worded too broadly.   Upon review of the Judge's oral order and the discussion at the hearing during which the order was pronounced, it is clear that the judge intended to preclude only that evidence that resulted from the recordings, but not other evidence obtained as a result of Plaintiffs' investigation.   The court adheres to that ruling.   Accordingly, the court will exclude evidence obtained exclusively as a result of the secret recordings, but will allow other evidence obtained as a result of Plaintiffs' investigations.

**IV. Evidence Related To Damages Under a Breach of Contract Action**

Carolina Farms argues that Plaintiffs should not be able to introduce evidence related to economic or actual damages that it has suffered under its breach of contract action because the only damages computation that Plaintiffs have put forward in discovery is the same damages computation given by Plaintiff's expert, Donald Davis, which the court ruled to be unreliable. Plaintiffs assert that Carolina Farms' invoices during the relevant period, together with the

---

[2] Rule 8.4(d) provides: "[I]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."   Rule 8.4, RPC, Rule 407, SCACR.

000080

Sublicense Agreement, provide an evidentiary basis from which to calculate damages if it is proven that Carolina Farms' sales of centipede were actually sales of TifBlair. Plaintiffs further assert that because these damages are subject to mathematical computation based on sales invoices and the Sublicense Agreement and do not rely on expert testimony, evidence of damages for the breach of contract should be admitted.

Having previously found that there were genuine issues of material fact concerning whether Carolina Farms complied with the terms of the agreement and whether Plaintiffs may recover for sales recorded by Defendants as "TifBlair" only, or also for sales recorded as "centipede" and "Carolina Green," the court will allow Plaintiffs to submit evidence regarding its damages under its breach of contract theory. To address Carolina Farms' concerns that it has not been provided any computation of damages other than the royalty adjustment calculation in Plaintiffs' expert's now-excluded opinion and can only guess as to the damages claimed by Carolina Farms with regard to their breach of contract claim, the court orders Plaintiffs to provide its computation of the damages sought under its breach of contract claim by August 14, 2013.

## CONCLUSION

For the reasons set forth above, Carolina Fresh Farms, LLC's Motion in Limine is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 9, 2013
Orangeburg, South Carolina

000081

14-1017
_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

THE TURFGRASS GROUP, INC., and UNIVERSITY OF
GEORGIA RESEARCH FOUNDATION, INC.,

                                         Plaintiffs-Appellants,

               v.

CAROLINA FRESH FARMS, INC., CAROLINA FRESH FARMS, L.L.C.
F/K/A CAROLINA FRESH FARMS, INC., and JOHN A. FOGLE, SR.,

                                  Defendants-Appellees.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA IN 5:10-cv-00849-JMC
_____

CERTIFICATE OF SERVICE

    I hereby certify that this day I did cause the Brief of Appellants to be served

on the principal attorney for the Appellees, Robert F. Goings, Esquire, via

CM/ECF.

                            RILEY POPE & LANEY, LLC

                       By: /s/ Damon C. Wlodarczyk
                            **Damon C. Wlodarczyk**
                            *Counsel for Appellants*
                            Post Office Box 11412
                            Columbia, SC 29211
                            Telephone: (803) 799-9993
                            E-mail: damonw@rplfirm.com

January 8, 2014

**FORM 19.  Certificate of Compliance With Rule 32(a)**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑   The brief contains [     *13,841*     ] words, excluding the parts of **the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)**, or

☐   The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑   The brief has been prepared in a proportionally spaced typeface using [     *Microsoft Office Word 2007*     ] in [     *14 point Times New Roman*     ], or

☐   The brief has been prepared in a monospaced typeface using [ *state name and version of word processing program* ] with [ *state number of characters per inch and name of type style* ].

_____
/s/ Damon C. Wlodarczyk
(Signature of Attorney)

Damon C. Wlodarczyk
_____
(Name of Attorney)

Appellants
_____
(State whether representing appellant, appellee, etc.)
January 8, 2014
_____
(Date)

Reset Fields